UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

BELLEAU TECHNOLOGIES, LLC,

        Plaintiff,

    v.                                        **COMPLAINT**

JOEALLENPRO LIMITED, a foreign corporation,
and JOE ALLEN, as an individual,              18 Civ. ____

        Defendants.

-----------------------------------------------------------x

        Plaintiff Belleau Technologies, LLC ("Belleau"), for its complaint against defendants JoeAllenPro Limited ("JoeAllenPro") and Joe Allen ("Allen") (together, "Defendants") alleges as follows:

## NATURE OF THE ACTION

        1.      This is a civil action for injunctive relief and damages arising under the Patent Act (35 U.S.C. § 1 *et seq.*), and for a declaratory judgment under the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202).

## PARTIES

        2.      Plaintiff Belleau is a limited liability company organized and existing under the laws of the State of New York. Belleau does business in this judicial district.

        3.      Upon information and belief, Defendant JoeAllenPro is a private company organized and existing in the United Kingdom with its principal place of business located at 48 Bowhill Way, Harlow, Essex, CM20 1FH, United Kingdom (company number 10003498). Upon information and belief, JoeAllenPro does business in this judicial district.

1

4. Upon information and belief, Defendant Allen is the sole officer, director, and shareholder of JoeAllenPro. Upon information and belief, Allen resides at the same registered corporate address of JoeAllenPro Limited, 48 Bowhill Way, Harlow, Essex, CM20, 1FH, United Kingdom. Upon information and belief, Allen does business in this judicial district through JoeAllenPro.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

6. Upon information and belief, this Court has personal jurisdiction over Defendants by reason of Defendants' acts of patent infringement that have been committed in this judicial district, and by virtue of its regularly conducted and systematic business contacts in this judicial district. As such, Defendants have purposefully availed themselves of the privilege of conducting business within this judicial district; have established sufficient minimum contacts with this judicial district such that they should reasonably and fairly anticipate being hauled into court in this judicial district; have purposefully directed activities at residents of this judicial district; and at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3).

## PRELIMINARY STATEMENT

8. This is an action to enforce and protect Plaintiff's valuable intellectual property rights. Plaintiff is the leading provider of mobile teleprompter applications (or "apps").

Plaintiff's success comes in large part from its patent, which is embodied in its scrolling method "VoiceTrack." VoiceTrack dynamically adjusts the position of the text on a screen by using speech recognition and accompanying algorithms. Belleau's PromptSmart line of branded products incorporates the VoiceTrack patented technology.

9. Defendants, direct competitors of Belleau, have misappropriated Belleau's patented technology, distributing and offering for sale knock-off versions of Belleau's patented PromptSmart app.

10. Defendants' conduct constitutes blatant and willful patent infringement. Defendants should be enjoined from further unlawful acts and Belleau should be awarded money damages for all prior acts of infringement.

## FACTUAL BACKGROUND

### The '646 Patent

11. On April 24, 2018, the United States Patent and Trademark Office (the "PTO") duly and legally issued U.S. Patent No. 9,953,646 ("the '646 Patent"), entitled "Method and System for Dynamic Speech Recognition and Tracking of Prewritten Script." The '646 Patent was filed on September 2, 2015. A true and correct copy of the '646 Patent is attached as Exhibit A.

12. The '646 Patent solves technical problems in the fields of teleprompting, television, film, internet video production, and public speaking by making the scrolling of any pre-written text "smart" by automatically discerning whether a speaker is uttering the content of the text or something else entirely, and then scrolling or stopping the text accordingly on a visual display. Belleau has incorporated this scrolling system into several commercially successful software products under the trade name "VoiceTrack." VoiceTrack is innovative and useful to

consumers because it automates a scrolling process which previously required additional human capital, manual controls, or even less desirable scrolling alternatives such as a pre-set, constant scroll speed.

13. The '646 Patent contains four independent claims numbered 1, 12, 15, and 18.

14. Claim 1 of the '646 Patent recites:

A computer-implemented method for dynamically presenting a prewritten text in a graphical user interface comprising

a) receiving a text artifact, said text artifact containing a plurality of artifact words;

b) storing, via a processor, said text artifact in a memory device of a computer;

c) retrieving, via said processor, said text artifact;

d) displaying said text artifact on the display screen of said computer;

e) receiving a vocal input;

f) generating, via said processor, a text file representing the words spoken in said vocal input, said text file containing a plurality of hypothesis words;

g) comparing, via said processor, a predetermined number of said hypothesis words to a predetermined number of said artifact words;

h) determining a match location in said text artifact where a specific number of said predetermined number of hypothesis words match a specific number of said predetermined number of artifact words;

i) altering, via said processor, the display on said display screen to display said match location on said display screen of said computer;

j) determining, via said processor, the font size of the text of said text artifact as displayed on said display screen;

k) determining, via said processor, the orientation of the electronic screen displaying the text of the text artifact;

32258348

l) altering, via said processor, said predetermined number of artifact words utilized for comparing to said predetermined number of hypothesis words.

15.     Claim 12 of the '646 Patent recites:

A computer-implemented method for dynamically presenting a prewritten text in a graphical user interface comprising

a) receiving a text artifact, said text artifact containing a plurality of artifact words;

b) storing, via a processor, said text artifact in a memory device of a computer;

c) retrieving, via said processor, said text artifact;

d) displaying said text artifact on the display screen of said computer;

e) receiving a vocal input;

f) generating, via said processor, a text file representing the words spoken in said vocal input, said text file containing a plurality of hypothesis words;

g) comparing, via said processor, a predetermined number of said hypothesis words to a predetermined number of said artifact words, wherein comparing said predetermined number of said hypothesis words to said predetermined number of said artifact words comprises

  i) creating a first group containing said predetermined number of hypothesis words;

  ii) creating a second group containing said predetermined number of artifact words, said second group being displayed on said display screen of said computer;

  iii) respectively determining whether each of said predetermined number of hypothesis words is present in said first group;

  iv) respectively determining whether each of said predetermined number of artifact words is present in said first group;

  v) generating a single number, wherein said single number is representative of the degree of similarity between said first group and said second group;

h) determining a match location in said text artifact where a specific number of said predetermined number of hypothesis words match a specific number of said predetermined number of artifact words;

i) altering, via said processor, the display on said display screen to display said match location on said display screen of said computer.

16. Claim 15 of the '646 Patent recites:

A computer-implemented method for dynamically presenting a prewritten text in a graphical user interface comprising

a) receiving a text artifact, said text artifact containing a plurality of artifact words;

b) storing, via a processor, said text artifact in a memory device of a computer;

c) retrieving, via said processor, said text artifact;

d) displaying said text artifact on the display screen of said computer;

e) receiving a vocal input;

f) generating, via said processor, a text file representing the words spoken in said vocal input, said text file containing a plurality of hypothesis words;

g) comparing, via said processor, a predetermined number of said hypothesis words to a predetermined number of said artifact words;

h) determining a match location in said text artifact where a specific number of said predetermined number of hypothesis words match a specific number of said predetermined number of artifact words;

i) altering, via said processor, the display on said display screen to display said match location on said display screen of said computer;

j) determining two or more second groups of said predetermined number of artifact words having a generated single number greater than a predetermined number;

k) creating a list of all bigrams contained in said predetermined number of hypothesis words;

l) creating a list of all trigrams contained in said predetermined number of hypothesis words;

m) respectively creating a list of all bigrams contained in each of said two or more second groups;

n) respectively creating a list of all trigrams contained in each of said two or more second groups;

o) respectively comparing each list of bigrams of said two or more second groups to said list of all bigrams contained in said predetermined number of hypothesis words;

p) respectively comparing each list of trigrams of said two or more second groups to said list of all trigrams contained in said predetermined number of hypothesis words;

q) determining one of said two or more second groups of said predetermined number of artifact words having the greatest total number of bigrams and trigrams present in said list of all bigrams and said list of all trigrams contained in said predetermined number of hypothesis words;

r) selecting said one of said two or more second groups of aid predetermined number of artifact words having the greatest total number of bigrams and trigrams present in said list of all bigrams and said list of all trigrams contained in said predetermined number of hypothesis words;

s) selecting a portion of said text artifact, wherein said selected portion of text artifact contains said selected one of said two or more second groups of said predetermined number of artifact words having the greatest total number of bigrams and trigrams present in said list of all bigrams and said list of all trigrams contained in said predetermined number of hypothesis words.

17.  Claim 18 of the '646 Patent recites:

A computer-implemented method for dynamically presenting a prewritten text in a graphical user interface comprising, on a computer comprising a microprocessor, a visual display, and a nonvolatile memory unit, said nonvolatile memory unit storing instructions which when executed by said microprocessor cause the computer to perform operations comprising

a) receiving a text artifact, said text artifact containing a plurality of artifact words;

b) storing, via a processor, said text artifact in a memory device of a computer;

c) retrieving, via said processor, said text artifact;

d) displaying said text artifact on the display screen of said computer;

7

e) receiving a vocal input;

f) generating, via said processor, a text file representing the words spoken in said vocal input, said text file containing a plurality of hypothesis words;

g) comparing, via said processor, a predetermined number of said hypothesis words to a predetermined number of said artifact words;

h) determining a match location in said text artifact where a specific number of said predetermined number of hypothesis words match a specific number of said predetermined number of artifact words;

i) altering, via said processor, the display on said display screen to display said match location on said display screen of said computer;

j) determining whether one or more words of said plurality of hypothesis words have been matched to a match location of said text artifact·

k) removing one or more words from said plurality of hypothesis words, wherein said removed words have been previously matched to a match location of said text artifact;

l) determining, via said processor, the font size of the text of said text artifact as displayed on said display screen;

m) determining, via said processor, the orientation of the electronic screen displaying the text of the text artifact;

n) altering, via said processor, said predetermined number of artifact words utilized for comparing to said predetermined number of hypothesis words.

18. The inventors of the '646 Patent are Eric Sadkin, Lakshmish Kaushik, Jasjeet Gill, and Etay Luz.

19. Belleau is presently the exclusive owner by assignment of the '646 Patent and possesses all rights of recovery under the '646 Patent, including the right to sue and the right to recover damages for infringement of claims of the '646 Patent.

## Defendants' Acts of Infringement

20. Plaintiff has established itself as the leading provider of mobile teleprompter apps, due in large part to the effective commercialization of its patented scrolling

8

method "VoiceTrack," which dynamically adjusts the position of the text on the screen by using speech recognition and accompanying algorithms. Belleau's PromptSmart line of branded products rest in large part on the cornerstone of VoiceTrack, which is marketed to consumers as a scrolling method that "follows your every word during your speech, automatically scrolling the text at your natural pace in real time [and if] you ad-lib or go off-script for a moment, PromptSmart knows and will stop scrolling and wait for you to go back on script." Belleau's PromptSmart products are the first and, until now, only speech-recognition based teleprompters.

21. For years, Belleau rightly enjoyed the exclusivity of having invented a new, useful, and unconventional method of scrolling the text of a teleprompter. Defendants are the first of Belleau's many competitors to market, distribute, and offer for sale an infringing copy-cat product.

22. JoeAllenPro is an online mobile application developer that purports to have created the AutoPrompter app. Upon information and belief, Joe Allen develops all software, including the AutoPrompter app, for JoeAllenPro.

23. JoeAllenPro is a direct competitor of Belleau. Both entities sell mobile applications that transform any iOS phone or tablet into a teleprompter. Belleau and Defendants market their products to the same customers and are presented in the Apple App Store ("App Store") side-by-side on the same virtual "shelf." Apple segregates App Store localities based on country, and the United States is far-and-away the largest English-speaking market in which Defendants distribute and offer for sale their current software products, including the infringing AutoPrompter product.

24. Despite being based in the United Kingdom, Defendants own and operate a global business by virtue of their relationship with Apple, which provides robust, worldwide

platforms to upload, test, distribute, market, and sell software applications designed for iOS devices, including both the App Store and the TestFlight beta software distribution platform ("TestFlight").

25.     Defendants have used, offered for sale, and/or imported in this judicial district and other parts of the United States, the AutoPrompter application that infringes the '646 Patent through TestFlight and the App Store.  The AutoPrompter meets all of the limitations of at least one of the claims of the '646 Patent.

**Pre-Suit Notice of the '646 Patent**

26.     Having been alerted to Defendants' infringing AutoPrompter app in early April of 2018, Jeremy Sadkin – a member-manager of Belleau and a permanent resident of New York – immediately applied and was accepted into Defendants' beta program, and subsequently downloaded the infringing AutoPrompter product onto an iPhone using TestFlight.  Mr. Sadkin tested the AutoPrompter product and verified that the product indeed contains a knock-off version of Belleau's patented scrolling method.  Screenshots of the beta version of the infringing AutoPrompter product are below:

  

27. Subsequently, on April 23, 2018, Belleau served a cease and desist letter on Defendants, demanding that Defendants immediately cease and desist all marketing, sale, and distribution of the AutoPrompter application as a result of Defendants' infringement of the '646 Patent. A true and correct copy of the April 23, 2018 letter is attached hereto as Exhibit B.

28. On May 10, 2018, Defendants responded to Belleau's April 23, 2018 letter, ignoring Belleau's demand that they cease and desist from all marketing, sale, and distribution of the infringing AutoPrompter application. A true and correct copy of the May 10, 2018 letter is attached hereto as Exhibit C.

29. On July 4, 2018, Defendants announced that the infringing AutoPrompter app is available for pre-order; the app is expected to be downloadable on July 18, 2018. The announcement further informs consumers that the AutoPrompter app will have an optional AutoPrompter Pro upgrade in the app, which is offered for sale for $34.99 per year or $11.99 for three months.

30. Upon information and belief, the standard version of the AutoPrompter app does not contain certain critical features, and thus, consumers will be compelled to upgrade to the "Pro" version of the app.

**Irreparable Harm to Belleau**

31. Belleau will suffer irreparable harm if this Court does not preliminarily enjoin the Defendants from using, making, selling, distributing, marketing, testing, importing, offering to sell, or otherwise using the infringing AutoPrompter app.

32. Upon information and belief, at all relevant times, Defendants knew of Belleau, its intellectual property, and the commercial success of Belleau's patented scrolling method.

11

33. Upon information and belief, after receiving more than one thousand applications and after seven beta versions, Defendants' AutoPrompter app has concluded its testing phase and will imminently be rolled out to the public on July 18, 2018.  Defendants are currently offering the app for pre-order.  Plaintiff will suffer irreparable and permanent harm, including but not limited to loss of market share, loss of goodwill, and loss of sales, without the emergency injunctive relief requested herein.  Moreover, Belleau's right to exclusivity in the United States is in serious jeopardy.

34. Upon information and belief, Defendants created the AutoPrompter app to overcome a competitive disadvantage they suffer due to Belleau's dominant market position and higher-quality PromptSmart products embodying Belleau's patented invention.  If not enjoined, the existence of a competing teleprompter app with "smart scrolling" will erode Plaintiff's goodwill and encourage other competitors to develop, distribute, and sell their own copy-cat products.  Further, the release of the infringing AutoPrompter app will irreparably decrease the size of Belleau's market share, potentially costing Belleau its position as the market leader.

35. Conversely, Defendants will suffer no cognizable injury if the Court preliminarily enjoins them from releasing the AutoPrompter app.

**FIRST CAUSE OF ACTION AS TO ALL DEFENDANTS**
**PATENT INFRINGEMENT (35 U.S.C. § 1 *ET SEQ.*)**

36. Belleau repeats and re-alleges the allegations in Paragraphs 1-35 as if fully set forth herein.

37. Belleau is the exclusive owner of the '646 Patent.  Belleau sells software products embodying the invention and has established itself as the market leader by virtue of the popularity of VoiceTrack and the exclusivity afforded by the '646 Patent.

38. Defendants' use, offer for sale, and/or importing of the AutoPrompter app in the United States infringes one or more claims of the '646 Patent in accordance with 35 U.S.C. § 271(a).

39. Defendants import the AutoPrompter application into the United States by uploading the app to Apple, a U.S.-domiciled company, for testing, processing, and review in TestFlight and then subsequently in the App Store. Upon information and belief, Defendants distributed the infringing AutoPrompter application to over one thousand U.S.-based consumer beta testers. These consumers were induced by Defendants into downloading and using the infringing AutoPrompter application using Apple's TestFlight software-distribution platform. Consumers now have the ability to pre-order the AutoPrompter app, with the option of upgrading to the "Pro" version of the app, which is offered for sale for $34.99 per year or $11.99 for three months.

40. Defendants have asserted that the infringing AutoPrompter application contains smart voice recognition scrolling as its central function, a fact that is further corroborated by the name of the infringing product itself – AutoPrompter, which is short for "automated teleprompter."

41. Defendants have further asserted that the smart voice recognition scrolling contained in the infringing AutoPrompter product "has the ability to listen to your voice as you speak, then accurately scroll your script as you're reading . . . [and] you can even digress from your script and AutoPrompter will politely wait for you to get back on track." This marketing copy is identical in substance to the way Belleau markets VoiceTrack to consumers.

42. Upon information and belief, the AutoPrompter's core function is none other than an unauthorized use of Belleau's patented method of dynamic speech recognition and

tracking of a pre-written script (i.e., VoiceTrack). The infringing AutoPrompter meets all of the limitations of at least one of the claims of the '646 Patent.

43. At all relevant times, Defendants have known of both the commercial viability of VoiceTrack and the particular uses of the '646 Patent. Defendants were put on explicit notice of Belleau's claims by virtue of the cease and desist letter dated April 23, 2018 sent to Defendants (Exh. B).

44. Upon further information and belief, at least since its knowledge of the '646 Patent, Defendants knowingly encouraged, and continue to encourage, current and potential customers to directly infringe one or more claims of the '646 Patent by Defendants' actions, including without limitation, instructing and encouraging users to use the infringing AutoPrompter app, including through its marketing and email activities and through its instructions directing customers on the AutoPrompter's download and use.

45. Upon information and belief, Defendants have also marketed and will continue to market the AutoPrompter app through coordinated campaigns through the App Store, through promotional videos on YouTube, through Allen's personal twitter account (@joeallenpro), and through email promotions.

46. Defendants' customers directly infringe the claims of the '646 Patent through their setup and use of the AutoPrompter app.

47. Finally, upon information and belief, the AutoPrompter and its various components have no substantial noninfringing use, and the components of the AutoPrompter are material components of the invention claimed by the '646 Patent.

48. Upon information and belief, Defendants are in violation of 35 U.S.C. § 271 (b) and (c), and have been, at least since Defendants' knowledge of the '646 Patent,

indirectly infringing, and continuing to infringe indirectly, at least one or more claims of the '646 Patent by knowingly and specifically intending to contribute or induce infringement by others (including but not limited to current and potential customers) via at least Defendants' acts of promotion and instructions to download and use the AutoPrompter app that are specifically configured to act according to the claims of the '646 Patent and do not have substantial noninfringing uses.

49. Defendants already offer four teleprompter software products to consumers across the globe, and with the addition of the infringing AutoPrompter app, this number will grow to five, causing further saturation of the market in which Belleau currently enjoys the exclusivity of its '646 Patent and goodwill thereto.

50. Defendants' infringing AutoPrompter product is intentionally designed to dilute the value of Belleau's current and future software products that embody the '646 Patent and to increase Defendants' market share at Belleau's expense.

51. As a direct and proximate consequence of Defendants willfully infringing, directly or indirectly, one or more claims of the '646 Patent, Belleau has suffered, is suffering, and will continue to suffer injury and damages in an amount to be determined at trial.

52. By reason of their infringing acts and practices, Defendants have further caused, are causing, and will continue to cause, immediate and irreparable harm to Belleau for which there is no adequate remedy at law, and for which Belleau is entitled to preliminary and permanent injunctive relief.

## SECOND CAUSE OF ACTION AS TO ALL DEFENDANTS
## DECLARATORY JUDGMENT – ALTER EGO (28 U.S.C. §§ 2201 AND 2202)

53. Belleau repeats and re-alleges the allegations in Paragraphs 1-52 as though fully set forth herein.

54. An actual controversy exists between Belleau and Defendants as Defendants have infringed the '646 Patent. The controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Allen is the alter ego of JoeAllenPro.

55. Upon information and belief, Allen is the sole shareholder and director of JoeAllenPro, an entity named after Allen.

56. Upon information and belief, no other person has yet to publicly represent himself as having authority over JoeAllenPro, either on the joeallenpro.com website or through JoeAllenPro email campaigns to registered users.

57. Upon information and belief, a picture of Allen appears in every browser tab opened to the joeallenpro.com website. That same picture is included in the email signature of JoeAllenPro's communications.

58. Upon information and belief, Allen personally or electronically signs all of JoeAllenPro's communications.

59. Upon information and belief, Allen conflates himself with the company on the joeallenpro.com website and in JoeAllenPro corporate communications by frequent use of the first person pronouns "I" and "me." Allen also conflates himself with the company by using a Twitter handle for his personal account that is named @joeallenpro.

60. Upon information and belief, Allen is approximately 25 years in age and claims to have launched "hundreds" of mobile applications.

61. Upon information and belief, the registered address of JoeAllenPro is located in a suburban residential neighborhood outside of London, where Allen himself resides.

62. Allen states on the joeallenpro.com blog that "I do all of the development and programming work myself."

63. Upon information and belief, Allen incorporated JoeAllenPro in February of 2016. At the time, Allen was offering software products such as the Teleprompter Premium from his personal (not corporate) Apple developer account at least throughout all of 2015 and early 2016.

64. Upon information and belief, JoeAllenPro only purports to hold title to software assets that belong to Allen personally. JoeAllenPro has always been a sham entity that holds merely nominal title – Allen is and always has been the true owner of all of JoeAllenPro's assets.

65. Upon information and belief, based on Allen's personal abilities as a software developer and his complete domination and control of JoeAllenPro, Allen is personally responsible for the illegal and wrongful acts described herein.

66. Based on the foregoing, Allen is the alter ego of JoeAllenPro by virtue of his complete domination and control of JoeAllenPro and by the apparent lack of separateness between him and JoeAllenPro.

67. Belleau seeks a declaration that Allen is the alter ego of JoeAllenPro, and that Allen abused his position by causing JoeAllenPro to willfully infringe Belleau's intellectual property rights, and by so doing he is personally liable, jointly and severally, for all damages suffered by Belleau.

32258348

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Belleau respectfully requests that this Court enter judgment in its favor as follows:

(1) Adjudging that Defendants have infringed, directly and indirectly, the '646 Patent and/or actively induced infringement of the '646 Patent;

(2) Adjudging that Defendants' infringement of the '646 Patent has been willful and deliberate, and deeming this case exceptional under 35 U.S.C. § 285;

(3) Adjudging that Joe Allen is the alter-ego of JoeAllenPro;

(4) Preliminarily and/or permanently enjoining Defendants, their employees, agents, subsidiaries, affiliates, parents, successors, assigns, officers, servants, attorneys, and any other person in active concert or participation with them, from any conduct that infringes, directly or indirectly, the '646 Patent, including making, selling, distributing, marketing, testing, importing, offering to sell, or otherwise using the AutoPrompter product (or any similarly infringing software product), without the express written authority of Belleau;

(5) Awarding Belleau damages under 35 U.S.C. § 284, or as otherwise permitted by law, including supplemental damages for any continued post-verdict infringement together with prejudgment and postjudgment interest on the damages award and costs and enhancements for willful infringement;

(6) Awarding costs of this action (including all disbursements) and attorneys' fees and interest pursuant to 35 U.S.C. § 285, or as otherwise permitted by law; and

(7) Awarding such other further relief as the Court deems just and proper.

New York, New York
July 12, 2018

                Respectfully submitted,

                CURTIS, MALLET-PREVOST,
                  COLT & MOSLE LLP

                By:    *s/Turner P. Smith*
                      Turner P. Smith (TS 8052)
                      Michael R. Graif (MG 4795)
                      Nicole M. Mazanitis (NM 1983)
                101 Park Avenue
                New York, New York 10178
                (212) 696-6000

                *Attorneys for Plaintiff*
                *Belleau Technologies, LLC*