UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

BELLEAU TECHNOLOGIES, LLC,

                 Plaintiff,                            18 Civ. 06319 (AJN)

       v.

JOEALLENPRO LIMITED, a foreign corporation;
and JOE ALLEN, as an individual,

                 Defendants.

----------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

TABLE OF CONTENTS

Preliminary Statement ........................................................................................................1

Statement of Facts ............................................................................................................2

Argument ..........................................................................................................................5

I.  Defendants Should Be Enjoined from Infringing the '646 Patent ........................5

   A.  Plaintiff is Likely to Succeed on the Merits of its Patent Infringement Claim ...........7

        1.  Belleau's Patent is Valid ..............................................................7

        2.  Defendants' AutoPrompter Application Infringes the '646 Patent .............8

             a.  The AutoPrompter Literally Infringes Belleau's Patent .................8

             b.  Alternatively, the AutoPrompter Infringes Belleau's Patent
                 Under the Doctrine of Equivalents ................................................12

             c.  Defendants Have Induced Infringement of the '646 Patent ...........13

   B.  Plaintiff Will Suffer Irreparable Injury Without an Injunction ...............................15

   C.  The Balance of Hardships Favors Plaintiff .................................................................17

   D.  The Public Interest Is Served by the Issuance of a Temporary Restraining
       Order and a Preliminary Injunction .........................................................18

Conclusion .......................................................................................................................19

i

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Anacomp, Inc. v. Shell Knob Servs.*,
   No. 93 Civ. 4003, 1994 U.S. Dist. LEXIS 223 (S.D.N.Y. Jan. 7, 1994) ........................... 16, 17

*AstraZeneca LP v. Apotex, Inc.*,
   623 F. Supp. 2d 579 (D.N.J. 2009) ...................................................................................... 14

*Atlas Powder Co. v. IrecoChems.*,
   773 F.2d 1230 (Fed. Cir. 1985) ............................................................................................. 8

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*,
   134 F.3d 1085 (Fed. Cir. 1998) ............................................................................................ 7

*Cognex Corp. v. Microscan Sys., Inc.*,
   No. 13 Civ. 2027, 2014 U.S. Dist. LEXIS 91203 (S.D.N.Y. June 30, 2014) ....................... 15

*Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech Inc.*,
   492 F. Supp. 2d 600 (E.D. Tex. 2007) ................................................................................. 16

*Complex Sys. Inc. v. ABN AMRO Bank N.V.*,
   No. 08 Civ. 7497,  2014 U.S. Dist. LEXIS 64467 (S.D.N.Y. May 9, 2014) ......................... 16

*Donohue v. Mangano*,
   886 F. Supp. 2d 126 (E.D.N.Y. 2010) ................................................................................. 19

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
   717 F.3d 1336 (Fed. Cir. 2013) ........................................................................................... 15

*Elite Licensing Inc. v. Thomas Plastics Inc.*,
   250 F. Supp. 2d 372 (S.D.N.Y. 2003) ................................................................................. 19

*Esbin & Alter, LLP v. Zappier*,
   No. 08 Civ. 313, 2010 U.S. Dist. LEXIS 9487 (S.D.N.Y. Feb. 4, 2010) .............................. 16

*Ferguson v. Tabah*,
   288 F.2d 665 (2d Cir. 1961) ................................................................................................ 19

*Glaxo Group Ltd. v. Apotex, Inc.*,
   64 Fed. Appx. 751 (Fed. Cir. Apr. 22, 2003) ........................................................................ 18

*Guttman, Inc. v. Kopykake Enters.*,
   302 F.3d 1352 (Fed. Cir. 2002) ............................................................................................ 6

*Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*,
   No. 11 Civ. 7211, 2012 U.S. Dist. LEXIS 103864 (S.D.N.Y. July 25, 2012) ...................... 17

*Hybritech, Inc. v. Abbott Labs.*,
   849 F.2d 1446 (Fed. Cir. 1988) ........................................................................................... 18

*Jacobson v. Cox Paving Co.*,
   No. 89 Civ. 1786, 1991 U.S. Dist. LEXIS 17787 (D. Ariz. May 16, 1991) ........................... 17

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ................................................................................................ 8

ii

*Microsoft Corp. v. i4i Ltd.*,
   564 U.S. 91 (2011)........................................................................................ 5

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002) ................................................................... 13

*Nautilus, Inc. v. Biosig Instr., Inc.*,
   134 S. Ct. 2120 (2014) .................................................................................. 5

*Oakley, Inc. v. Sunglass Hut Int'l*,
   316 F.3d 1331 (Fed. Cir. 2003) ..................................................................... 6

*Ortho Pharm. Corp. v. Smith*,
   959 F.2d 936 (Fed. Cir. 1992) ....................................................................... 6

*Pfizer, Inc. v. Teva Pharms., USA*,
   429 F.3d 1364 (Fed. Cir. 2005) ................................................ 7, 8, 17, 18

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*,
   237 F.3d 1359 (Fed. Cir. 2001) ..................................................................... 7

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2011) ...................................................................... 15, 17

*Sanofi-Synthelabo v. Apotex*,
   488 F. Supp. 2d 317 (S.D.N.Y. 2006) ...................................................... 8, 18

*SEB S.A. v. Montgomery Ward & Co., Inc.*,
   77 F. Supp. 2d 399 (S.D.N.Y. 1999) .......................................................... 18

*Upjohn Co. v. Medtron Labs, Inc.*,
   751 F. Supp. 416 (S.D.N.Y. 1990) ......................................................... 17, 18

*Veracode, Inc. v. Appthority, Inc.*,
   137 F. Supp. 3d 17 (D. Mass. 2015) .............................................................. 6

*Warner-Jenkins Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)................................................................................... 12, 13

*Water Techs. Corp v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988) ...................................................................... 13

*Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*,
   339 F.3d 101 (2d Cir. 2003) .......................................................................... 15

## **Statutes**

35 U.S.C. § 154 ................................................................................................ 6

35 U.S.C. § 271 ............................................................................................ 1, 13

35 U.S.C. § 282 ................................................................................................ 7

35 U.S.C. § 283 .............................................................................................. 1, 6

Fed. R. Civ. P. 65(a) ....................................................................................... 1

Plaintiff Belleau Technologies, LLC ("Belleau") respectfully submits this memorandum of law in support of its motion for a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65(a) and 35 U.S.C. §§ 271 and 283.

PRELIMINARY STATEMENT

Belleau is the exclusive owner by assignment of a U.S. Patent No. 9,953,646 (the "'646 Patent") entitled "Method and System for Dynamic Speech Recognition and Tracking of Prewritten Script." Plaintiff is currently the market leader in mobile teleprompter app software due in large part to Belleau's successful implementation of its patented method of scrolling (which goes by the tradename "VoiceTrack") into a branded line of PromptSmart products. VoiceTrack is a scrolling method that dynamically adjusts the position of a text display by using speech recognition and accompanying algorithms. Belleau rests on VoiceTrack as the foundation of its business and further uses VoiceTrack as the primary differentiator of PromptSmart products. Belleau's invention is new, useful, unconventional, and commercially successful.

Defendant Joe Allen ("Allen") permanently resides in the United Kingdom (the "UK") and his shell company, Defendant JoeAllenPro Limited ("JoeAllenPro," and collectively with Allen, "Defendants"), is also incorporated there. Despite being based in the UK, both Defendants nevertheless own and operate a business that is global in reach by virtue of their relationship with Apple Inc. ("Apple"), which provides a robust, worldwide platform to upload, test, distribute, and sell software applications designed for iOS devices. Plaintiff and Defendants are in direct competition with each other to sell their respective mobile applications – i.e., mobile app software that transforms any iOS phone or tablet into a teleprompter.

Defendants, realizing Belleau's success – and seeking to overcome a competitive disadvantage – have deliberately stolen Belleau's valuable intellectual property and have

1

imported and offered for sale a copy-cat product called "AutoPrompter."  Without immediate intervention by the Court, AutoPrompter will be globally available for download on the Apple App Store on July 18, 2018.

Defendants have refused to comply with Belleau's demands to cease and desist and are on notice of their infringement since at least April 23, 2018.  Belleau's right to exclusivity in the U.S. under the '646 Patent is in imminent and serious jeopardy.  Given the strength of Belleau's infringement claim on the merits and the blatant, willful nature of the Defendants' infringement, both public policy and the balance of hardships overwhelmingly support Plaintiff's application for injunctive relief.  Moreover, Belleau will surely suffer irreparable injury without injunctive relief, including, but not limited to, loss of market share and the loss of goodwill it enjoys under the PromptSmart brand.

Belleau respectfully requests that the Court grant emergency equitable relief in the form of a temporary restraining order and a preliminary injunction to prevent infringement from occurring and to preserve the status quo while the outcome of this litigation is determined.

### STATEMENT OF FACTS

Belleau is the owner of the '646 Patent, which describes a "Method and System for Dynamic Speech Recognition and Tracking of Prewritten Script."  *See* Declaration of Jeremy S. Sadkin, dated July 17, 2018 (the "J. Sadkin Decl."), ¶ 3.  Belleau's '646 Patent is embodied in numerous teleprompter software applications and goes by the trade name "VoiceTrack."  *Id.* ¶ 9. VoiceTrack is a core feature of Belleau's branded line of PromptSmart applications and is a strong differentiator in the minds of consumers.  *Id.* ¶ 9, Ex. 3.  Belleau's successful commercial implementation of its patented method (among other reasons) has caused it to rise above the competition, and as a result Belleau is currently the leading provider of mobile teleprompter software in the Apple App Store.  *Id.* ¶ 7.

2

Belleau's invention has led to substantial growth in the consumer market for teleprompter software precisely *because* the invention makes such software products inherently more useful, more affordable, and more accessible to the average person.  *Id.* ¶ 9, Ex. 3.  Indeed, from the moment Belleau launched the PromptSmart brand in 2014, Belleau has always represented that VoiceTrack is a technological leap forward in teleprompter software and that this advancement is protected by underlying intellectual property rights pursuant to Belleau's pending patent application – now the '646 Patent.  *Id.* ¶ 11.  As news of Belleau's invention spread, the PromptSmart brand accumulated substantial goodwill.  *Id.* ¶ 12.

The PromptSmart brand, buoyed by VoiceTrack and the '646 Patent, is the market leader in consumer-oriented teleprompter software.  *Id.* ¶ 8.  More often than not, PromptSmart Pro – Belleau's flagship product – appears as the number one search result for the term "teleprompter" when searching for software products in the Apple App Store on both iPhones and iPads from within the United States.  *Id.* ¶ 7.  In addition, PromptSmart products, by a large margin, are more frequently rated and more highly rated than any of Belleau's competitors, including the Defendants' current teleprompter product offerings:  Teleprompter Premium and Video Teleprompter.  *Id.*

At all relevant times, Defendants have been aware of Belleau, its intellectual property, and the competitive disadvantage it suffers in Belleau's shadow.  *Id.*, Ex. 6 (AutoPrompter beta testing application included reference to Belleau's PromptSmart applications).  And yet Defendants, seeking to bridge a competitive gap, and without Belleau's authority or consent, have developed a copycat "AutoPrompter" application that purports to do what only Belleau's patented VoiceTrack system currently does – listen "to your voice as you speak, then accurately scroll your script as you're reading . . . [and] you can even digress from your script and

3

AutoPrompter will politely wait for you to get back on track."  *Id.* ¶ 13, Ex. 4.

Defendants' use, offer for sale, and/or import the AutoPrompter app in the United States.
Defendants imported the AutoPrompter application into the United States by uploading the app
to Apple, a U.S.-domiciled company, for testing, processing, and review in Apple's TestFlight
beta software distribution platform ("TestFlight") and then subsequently in the App Store.  *Id.* ¶
16.  Subsequently, on or about April 2, 2018, defendant Joe Allen sent an electronic mail to a
distribution list containing the subject header "Invitation to Beta Test a New Teleprompter App,"
the body of which explained that the app was called "AutoPrompter . . . a truly versatile
professional Teleprompter app featuring smart voice recognition scrolling."  *Id.* ¶ 15.
Defendants required prospective testers to apply and be approved prior to participation in the
testing round.  *Id.*  The application asked respondents to note whether they had ever used two of
Belleau's PromptSmart applications (which both embody the '646 Patent).  *Id.*  Jeremy Sadkin,
an employee of Belleau, downloaded and used the beta version of the AutoPrompter.  *Id.* ¶ 17.
According to Defendants' July 4, 2018 announcement, the AutoPrompter testing phase has
concluded and the AutoPrompter app is currently on the App Store for pre-order and will be
officially released on July 18, 2018.  *Id.* ¶ 25, Ex. 5.

Defendants have and continue to instruct and encourage consumers to use the infringing
AutoPrompter app through marketing and email activities and through instructions directing
customers on the AutoPrompter's download and use.  *Id.* ¶ 28, Ex. 11.  Defendants have also
marketed and will continue to market the AutoPrompter app through coordinated campaigns
through the App Store, through promotional videos on YouTube, through Allen's personal
twitter account (@joeallenpro), and through email promotions.  *Id.*

On April 23, 2018, Belleau attempted in good faith to enforce its intellectual property

4

rights by serving Defendants with a cease and desist letter; Defendants replied on May 10, 2018, declining to admit patent infringement, and nevertheless pressing on with their intention to imminently release the AutoPrompter app.  *Id.* ¶¶ 18-19, 25-26.  Further, Defendants have spoliated critical evidence relied upon by Belleau in its Complaint by removing blog posts from the joeallenpro.com website, evidencing an alarming willingness to breach their duty to preserve evidence.  *Id.* ¶¶ 27, n.3, 30.  Defendants' actions demonstrate a pattern of dilatory, unjustifiable, and unlawful conduct.  *Id.* at ¶ 30.

Without immediate intervention by this Court, the AutoPrompter app – once released – will cause Belleau irreparable harm by (a) causing Belleau to compete with knock-offs of its own invention; (b) saturating an already competitive market for teleprompter software; (c) damaging Belleau's reputation and goodwill; (d) costing Belleau its position as the market leader; and (e) encouraging other potential competitors to distribute "knock-off" products themselves. Belleau's good faith attempts to resolve this matter have been unreasonably rejected or ignored, and Defendants' pattern of willful disregard for Belleau's rights will only continue without this Court's intervention.  *Id.* ¶¶ 30-31.

<u>**ARGUMENT**</u>

I.     **Defendants Should Be Enjoined from Infringing the '646 Patent**

With express authority from Article I of the Unites States Constitution, Congress enacted federal patent laws to reward "inventors with a limited monopoly . . . property right" over their inventions.  *Nautilus, Inc. v. Biosig Instr., Inc.*, 134 S. Ct. 2120, 2124 (2014).  A patent is presumptively valid.  *See Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 100 (2011).  Moreover, "[o]nce issued, a patent grants certain exclusive rights to its holder, including the exclusive right to use the invention during the patent's duration."  *Id.* at 96.

5

Under the Patent Act, a Court may order an injunction "in accordance with the principles of equity to prevent the violation of *any right* secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283 (emphasis added).  Accordingly, federal courts have concluded that the proper purpose of an injunction is to prevent infringement from occurring. *See Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 96 (D. Mass. 2015) (citation omitted) (noting that injunctive relief is proper to prevent infringement, and declining to order injunction for past infringement).  Indeed, a patent holder may be required to seek injunctive relief to adequately protect the holder's right to "exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States . . . ." 35 U.S.C. § 154 (a)(1).

Whether a temporary restraining order or preliminary injunction should issue turns on four factors:  "(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003) (citation omitted).  No single factor is determinative; rather, "[t]he court must balance these factors against one another and against the extent of the relief sought." *Guttman, Inc. v. Kopykake Enters.*, 302 F.3d 1352, 1363 (Fed. Cir. 2002) (citation omitted).  District courts are given broad discretion under 35 U.S.C. § 283 in "determining whether the facts of a case warrant an injunction and in determining the scope of the injunctive relief." *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 945 (Fed. Cir. 1992).

Due to Defendants' past infringement and the virtual certainty of continued future infringement and irreparable harm, Belleau respectfully requests that the Court immediately enjoin Defendants and their employees, agents, subsidiaries, affiliates, parents, successors,

32388761

assigns, officers, servants, attorneys, and any other person in active concert or participation with them, from any conduct that infringes, directly or indirectly, the '646 Patent, including making, selling, distributing, marketing, testing, importing, offering to sell, or otherwise using the AutoPrompter software product – or any other similarly infringing software application – within the United States.

### A.    Plaintiff is Likely to Succeed on the Merits of its Patent Infringement Claim

The first factor to be considered is the likelihood of success of Belleau establishing the validity of its Patent and Defendants' infringement thereof.  *See Pfizer, Inc. v. Teva Pharms., USA*, 429 F.3d 1364, 1372 (Fed. Cir. 2005).  Belleau's '646 Patent is valid, and Defendants' AutoPrompter product infringes the Patent.

### 1.    Belleau's Patent is Valid

By statute, "[a] patent shall be presumed valid."  35 U.S.C. § 282.  Accordingly, "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  *Id.*  Here, the United States Patent Office was satisfied that a patent should issue, and Belleau is entitled to rest on the presumption of validity.  *See Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) ("Every patent is presumed valid[.]"); *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998) ("[A] patent is presumed valid, and this presumption exists at every stage of the litigation.").  Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue.  *See Purdue Pharma*, 237 F.3d at 1365 ("if [defendant] fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies [plaintiff's] burden on validity"); *Canon*, 134 F.3d at 1088.

7

At the preliminary injunction stage, "the trial court does not resolve the validity question but rather must . . . make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *Sanofi-Synthelabo v. Apotex*, 488 F. Supp. 2d 317 (S.D.N.Y. 2006) (citation omitted).  No such evidence is known to exist.

  **2.**  **Defendants' AutoPrompter Application Infringes the '646 Patent**

Determining infringement is a two-step process.  First, the claims are construed, and second, the properly construed claims are compared to the accused infringing method.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  To satisfy the second prong, a patentee must show that an accused product or method meets every claim limitation either literally or under the doctrine of equivalents.  *See Pfizer*, 429 F.3d at 1376.  Here, Defendants have used, offered for sale, and/or imported the AutoPrompter product, and the AutoPrompter product literally infringes Plaintiff's '646 Patent, or in the alternative, infringes the '646 Patent in accordance with the doctrine of equivalents.

  **a.**  **The AutoPrompter Literally Infringes Belleau's Patent**

To have literal infringement, each of the literal terms or elements of a claim must be present in the accused infringing device or process performed by that device.  *See Atlas Powder Co. v. IrecoChems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985).  Here, Defendants' AutoPrompter app infringes one or more claims of the '646 Patent, including Claim 18.  The chart below outlines each limitation of Claim 18 the '646 Patent (J. Sadkin Decl., Ex. 1), and the infringing AutoPrompter app's corresponding infringing function:

| Claim 18 of the '646 Patent | The Infringing AutoPrompter App |
|---|---|
| A computer-implemented method for dynamically presenting a prewritten text in a graphical user interface comprising, on a computer comprising a microprocessor, a visual display, and a nonvolatile memory unit, said nonvolatile memory unit storing instructions which when executed by said microprocessor cause the computer to perform operations comprising | The AutoPrompter is a computer-implemented method of scrolling text presented on a screen. *See* Declaration of Eric Sadkin, dated July 17, 2018 (the "E. Sadkin Decl.), ¶ 11(b). Said computer contains random-access memory (also known as "RAM"), which, when executed by the computer's microprocessor, causes the computer to perform the operations in subsections (a) through (n). *Id.* Mobile phones and tablets such as iPhones and iPads are included within this definition. *Id.* More specifically, the AutoPrompter app is designed for iPhones and iPads. *Id.* |
| a) receiving a text artifact, said text artifact containing a plurality of artifact words; | According to Defendants, the AutoPrompter receives user-generated content/scripts which contain a plurality of artifact words. *See* J. Sadkin Decl., Ex. 5 (stating that the AutoPrompter "scrolls your script," "[r]eflect[s] the text of your script," and allows a user to "import" documents). |
| b) storing, via a processor, said text artifact in a memory device of a computer; | The AutoPrompter stores text artifacts using computer memory. *See* E. Sadkin Decl., ¶ 11(d). |
| c) retrieving, via said processor, said text artifact;<br><br>d) displaying said text artifact on the display screen of said computer; | The AutoPrompter retrieves and displays the user's script. *See* E. Sadkin Decl., ¶ 11(e). Further, according to Defendants, the AutoPrompter allows for editing and display of the script on the screen (J. Sadkin Decl., Ex. 5), which necessarily involves retrieving and displaying the text. *See* E. Sadkin Decl., ¶ 11(e). |
| e) receiving a vocal input; | The AutoPrompter receives a vocal input. *See* J. Sadkin Decl., ¶ 23. Indeed, Defendants state that the AutoPrompter "listen[s] to your voice as you speak, then accurately scroll your script as you're reading it in real time." J. Sadkin Decl., ¶ 13, Ex. 4. |
| f) generating, via said processor, a text file representing the words spoken in said vocal input, said text file containing a plurality of | The AutoPrompter utilizes a speech recognition platform. *See* E. Sadkin Decl., ¶ 11(a). Any speech recognition platform must |

9

| Claim 18 of the '646 Patent | The Infringing AutoPrompter App |
|---|---|
| hypothesis words; | convert speech into text, with the text file containing a plurality of hypothesis words. *Id.* Further, by claiming to use automatic speech recognition ("<u>ASR</u>") in the AutoPrompter (J. Sadkin Decl., Ex. 5, stating that AutoPrompter "[i]ntelligently scrolls your script automatically using voice recognition"), Defendants have also admitted to speech-to-text conversion. *See* E. Sadkin Decl., ¶ 11(a). |
| g) comparing, via said processor, a predetermined number of said hypothesis words to a predetermined number of said artifact words; | According to Defendants, the AutoPrompter deploys an ASR system that follows vocal input to scroll the prewritten script and also stops scrolling if the vocal input does not match the prewritten text. *See* J. Sadkin Decl., ¶ 13, Ex. 4.  The AutoPrompter cannot do this without comparing some number of hypothesis words generated from the vocal input against some number of words in the prewritten script. E. Sadkin Decl., ¶ 12(a). |
| h) determining a match location in said text artifact where a specific number of said predetermined number of hypothesis words match a specific number of said predetermined number of artifact words; | There is no conceivable method to accurately identify a match between a vocal input and a prewritten script without first determining what piece of text on the display was spoken by the user, i.e., determining a match location by matching hypothesis words with artifact words. *See* E. Sadkin Decl., ¶ 12(a)-(b). |
| i) altering, via said processor, the display on said display screen to display said match location on said display screen of said computer; | According to Defendants, the AutoPrompter scrolls the prewritten script on the computer display in real time using ASR. *See* J. Sadkin Decl., ¶ 13, Ex. 4 (according to Defendants, AutoPrompter purports to be a teleprompter application that listens "to your voice as you speak, then accurately scroll[s] your script as you're reading . . . [and] you can even digress from your script and AutoPrompter will politely wait for you to get back on track"); Ex. 5 (AutoPrompter "[i]ntelligently scrolls your script automatically using voice recognition"). <br><br> Further, according to Defendants' admissions on the AutoPrompter Apple App Store product page and the AutoPrompter product website |

| Claim 18 of the '646 Patent | The Infringing AutoPrompter App |
|---|---|
| | (autoprompter.com), the core feature of AutoPrompter is the "Smart Voice Engine" that can "listen to you reading your script and intelligently scroll in real time." J. Sadkin Decl., ¶ 14, Ex. 5. |
| j) determining whether one or more words of said plurality of hypothesis words have been matched to a match location of said text artifact; | According to Defendants, the AutoPrompter scrolls the prewritten script on the computer display in real time using ASR. *See* J. Sadkin Decl., ¶ 13, Ex. 4. There is no conceivable way for AutoPrompter to accurately scroll in real time without tracking the speaker's position within the script by identifying spoken portions of the text artifact (i.e., determining whether the hypothesis words have been matched to the text artifact) and then excluding those spoken portions as candidates for further matching. *See* E. Sadkin Decl., ¶ 12(b). |
| k) removing one or more words from said plurality of hypothesis words, wherein said removed words have been previously matched to a match location of said text artifact; | |
| l) determining, via said processor, the font size of the text of said text artifact as displayed on said display screen; | The AutoPrompter displays text on a screen (J. Sadkin Decl., ¶ 23), and thus must determine the size of that text in order to fit it to the screen. *See* E. Sadkin Decl., ¶ 12(c). |
| m) determining, via said processor, the orientation of the electronic screen displaying the text of the text artifact; | All Apple devices have a gyroscope built in to the hardware. *See* E. Sadkin Decl., ¶ 12(d). According to the AutoPrompter App Store product page, the app is "Optimised for all device sizes and both landscape and portrait operation" (J. Sadkin Decl., Ex. 5), and therefore the AutoPrompter must have a method of determining the orientation of the screen. *See* E. Sadkin Decl., ¶ 12(d). |
| n) altering, via said processor, said predetermined number of artifact words utilized for comparing to said predetermined number of hypothesis words. | The AutoPrompter claims to scroll the prewritten script on the computer display in real time using ASR. *See* J. Sadkin Decl., ¶ 13, Ex. 4. There is no conceivable method to accurately match and scroll any prewritten script without making a series of smaller decisions/matches and progressing through an entire prewritten script piece by piece. The matching window is dynamic and will thus contain different artifact words depending on the progress of the speaker through the script. |

11

| **Claim 18 of the '646 Patent** | **The Infringing AutoPrompter App** |
|---|---|
|  | *See* E. Sadkin Decl., ¶ 12(e). |

Defendants have not denied that the AutoPrompter product is anything other than an unauthorized embodiment of the patent (i.e., dynamic matching and scrolling of text in a graphical interface using speech recognition). *See* J. Sadkin Decl. ¶ 19, Ex. 8 (following receipt of Belleau's cease and desist letter, Defendants' letter in reply merely declined to admit infringement in a conclusory statement). Further, Defendants' reply letter made no representation about the AutoPrompter app being outside the scope of Belleau's patent. *Id.* Instead, Defendants' efforts to pirate Belleau's intellectual property in a directly competing mobile app product is knowing and willful.

As set forth above, Defendants literally incorporate each and every element recited in Claim 18 of the '646 Patent; and therefore Defendants literally and directly infringe the '646Patent. Based upon the proof of infringement presented herein, Belleau has demonstrated a reasonable likelihood of success on the issue of infringement for purposes of the preliminary injunction.

>    **b.    Alternatively, the AutoPrompter Infringes Belleau's Patent Under the Doctrine of Equivalents**

Alternatively, Defendants infringe the '646 Patent in accordance with the doctrine of equivalents. Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkins Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). To prove infringement under the doctrine of equivalents, a plaintiff must show that an asserted equivalent represents an "insubstantial difference" from the claimed element, or "whether the

12

substitute element matches the function, way, and result of the claimed element." *Warner-Jenkinson Co.*, 520 U.S. at 40 (citation omitted).  The doctrine of equivalents has grown out of a "legally implied term in each patent claim that the claim extends to the thing patented, however its form or proportions may be varied." *Id.* at 34-35 (internal citations and quotation marks omitted).

Software implementation in particular involves a high degree of known interchangeability of individual elements in order to reproduce the same end result – i.e., speech-recognition-based matching and scrolling.  *See* E. Sadkin Decl., ¶ 13.  Here, there is no conceivable method by which Defendants can purport to offer the offending AutoPrompter teleprompter product without adopting elements "identical or equivalent to each claimed element" of Belleau's Patent.  *See id.* ¶ 14; *Warner-Jenkinson Co.*, 520 U.S. at 24-25 (1997). Indeed, Defendants' AutoPrompter application deploys either identical or substituted elements that are substantially the same, do the same work, and accomplish the same result as the claims described in Belleau's '646 Patent.  *See* E. Sadkin Decl., ¶ 15; *Warner-Jenkinson Co.*, 520 U.S. at 24-25 (citation omitted).  Belleau thus is likely to prove that the AutoPrompter application infringes the claims of the '646 Patent.

### c.      Defendants Have Induced Infringement of the '646 Patent

In addition to directly infringing the '646 Patent, Defendants have also indirectly infringed the '646 Patent.  "Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement," and "second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002) (citations omitted).  "While proof of intent is necessary, direct evidence is not required;

13

rather, circumstantial evidence may suffice." *Water Techs. Corp v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988).

Defendants knowingly induced infringement and possessed specific intent to encourage consumers' direct infringement of the '646 Patent by encouraging them to use the AutoPrompter app.  In the first instance, consumers have used the AutoPrompter product, particularly, in the beta testing phase.  *See* J. Sadkin Decl., ¶¶ 15, 28, Ex. 11.  Defendants were on notice of infringement, at the latest, by April 23, 2018.  *See* J. Sadkin Decl., ¶ 18, Ex. 7. Defendants again received notice of their infringement by letter dated July 5, 2018.  *See id.* ¶ 27, n.3.  And Defendants themselves admitted to knowing of the PromptSmart product in their beta testing application.  *Id.*, Ex. 6.  Defendants also knowingly encouraged, and continue to encourage, current and potential customers to directly infringe the '646 Patent by convincing, instructing, and encouraging consumers to use the infringing AutoPrompter app, including through its marketing and email activities and through its instructions directing customers on the AutoPrompter's download and use.  *See id.* ¶ 28, Ex. 11.  Defendants have also marketed and will continue to market the AutoPrompter app through coordinated campaigns through the App Store, through promotional videos on YouTube, through Allen's personal twitter account (@joeallenpro), and through email promotions.  *See id.*  This evidence demonstrates that Defendants knowingly induced infringement and possessed specific intent to encourage consumers' infringement.  *See AstraZeneca LP v. Apotex, Inc.*, 623 F. Supp. 2d 579, 603 (D.N.J. 2009) (collecting cases).  Plaintiff is thus also likely to succeed on its indirect patent infringement claim.

*              *              *

Because Belleau is likely to succeed on the merits of its patent infringement claim, this factor strongly militates in favor of granting equitable injunctive relief against Defendants in order to prevent current and future infringement from taking place.

### B.     Plaintiff Will Suffer Irreparable Injury Without an Injunction

Irreparable harm is a "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003). To prove irreparable harm, a plaintiff must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm. *Id.* (citation omitted). "Harm might be . . . irreparable[] for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2011).

Belleau and Defendants are direct competitors vying for the business of the same group of customers. *See* J. Sadkin Decl., ¶ 5. Enjoining a direct competitor from adopting an infringing software system in a competing product is necessary to prevent irreparable harm to plaintiff. *See Cognex Corp. v. Microscan Sys., Inc.*, No. 13 Civ. 2027, 2014 U.S. Dist. LEXIS 91203, *3-4 (S.D.N.Y. June 30, 2014) ("[P]laintiffs face irreparable harm if infringing versions of the Mobile Hawk product are permitted to compete with Cognex products that utilize the inventions claimed in the '487 patent . . . because Cognex and Microscan are competitors in this market[.]"). Belleau has a valid expectation of exclusivity and should not be forced to compete with knock-offs of its own invention. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344-45 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions.").

15

Further, if Defendants' AutoPrompter application is allowed onto the market, such release will saturate the market for Belleau's patented invention, making it impossible to determine the portions of the market Belleau would have secured but for the Defendants' infringing conduct and how much damage was done to Belleau's brand recognition and goodwill due to the infringement. *See Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech Inc.*, 492 F. Supp. 2d 600, 605 (E.D. Tex. 2007); *see* J. Sadkin Decl. ¶ 6 (the AutoPrompter would crowd the iOS App Store market with a fifth teleprompter product offered by Defendants). This loss of brand name recognition and potential goodwill constitutes irreparable harm. *See Complex Sys. Inc. v. ABN AMRO Bank N.V.,* No. 08 Civ. 7497, 2014 U.S. Dist. LEXIS 64467, *38, 43 (S.D.N.Y. May 9, 2014) (holding that loss of goodwill or reputation may constitute irreparable harm).

Additionally, Belleau is in jeopardy of losing its position as market leader and the advantage of being the pioneer in the field, both of which constitute irreparable harm. *See Esbin & Alter, LLP v. Zappier*, No. 08 Civ. 313, 2010 U.S. Dist. LEXIS 9487, at *6-7 (S.D.N.Y. Feb. 4, 2010) (granting preliminary injunction motion because plaintiff's "competitive position has been threatened by the ways in which the [defendant's] program has allowed [defendant] to exploit the program's functionality and [plaintiff's] proprietary expertise as embodied in the software. That erosion will only be made worse if [defendant] is permitted to disseminate its software to other competitors. The threat is particularly significant given [plaintiff's] dominant position in the market over [defendant]."); *Anacomp, Inc. v. Shell Knob Servs.*, No. 93 Civ. 4003, 1994 U.S. Dist. LEXIS 223, at *17-18 (S.D.N.Y. Jan. 7, 1994) ("if defendants are permitted to continue to use the Proprietary information to maintain, refurbish and service Anacomp and DatagraphiX X-series COM recorders, [plaintiff] will loose [sic] its leadership position in the

16

maintenance of its own equipment.  This loss of market leadership . . . could not be compensated through money damages.").

Finally, if the Defendants are not enjoined from infringing the '646 Patent, other potential competitors will be encouraged to distribute "knock-off" apps, and will flood the market with inferior products.  *See Jacobson v. Cox Paving Co.*, No. 89 Civ. 1786, 1991 U.S. Dist. LEXIS 17787, at *45, 49 (D. Ariz. May 16, 1991).

Because Belleau faces the prospect of losses that are difficult to measure and to replace, and because such losses are inconsistent with Belleau's legal right to exclusively use, sell, and commercially exploit the '646 Patent, money damages are an inadequate remedy.  Without an injunction preventing the distribution and sale of Defendants AutoPrompter application, Belleau will suffer irreparable injury.

### C.    The Balance of Hardships Favors Plaintiff

"A court must consider the balance of hardships between the plaintiff and defendant and issue [an] injunction only if the balance of hardships tips in the plaintiff's favor."  *Salinger*, 607 F.3d at 80.  Belleau has invested extensive time, labor, skills, and expenditures in developing its product and has diligently worked to protect its business, reputation, and patent.  *See* E. Sadkin Decl., ¶ 5.  On the other hand, it is well-settled that "[a]n alleged infringer's loss of market share and customer relationships, without more, does not rise to the level necessary to overcome the loss of exclusivity experienced by a patent owner due to infringing conduct."  *Pfizer,* 429 F.3d at 1382; *accord Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11 Civ. 7211, 2012 U.S. Dist. LEXIS 103864, *56 (S.D.N.Y. July 25, 2012) (when a direct competitor knowingly copies a patented design it assumed the risk of financial loss); *Upjohn Co. v. Medtron Labs, Inc.*, 751 F. Supp. 416, 430 (S.D.N.Y. 1990) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so

17

elected."); *Glaxo Group Ltd. v. Apotex, Inc.*, 64 Fed. Appx. 751, 756 (Fed. Cir. Apr. 22, 2003) ("The district court did not clearly err in finding that without the preliminary injunction, [plaintiff] would lose the value of its patent while [defendant] would only lose the ability to go on to the market and begin earning profits earlier."); *SEB S.A. v. Montgomery Ward & Co., Inc.*, 77 F. Supp. 2d 399, 405 (S.D.N.Y. 1999) (deprivation of plaintiff's "right to exclude others from selling the patented device" outweighed effect of enjoining defendant from selling a product "it recently has been to sell").  Thus, it is manifest that balancing the parties' respective potential hardships favors Belleau.

     **D.**    **The Public Interest Is Served by the Issuance of a**
               **Temporary Restraining Order and a Preliminary Injunction**

        Even if the public policy interests supporting each side were even, a finding that "neither party has a clear advantage" would be sufficient to sustain an injunction.  *See Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457-58 (Fed. Cir. 1988).  In this case, consideration of the public interest weighs clearly in favor of Belleau.  It is unclear what legitimate public interest would be served by Defendants' distribution of patent-infringing products.  Indeed, in patent infringement cases, there is a compelling, intrinsic public interest in protecting rights secured by valid patents.  *See Pfizer*, 429 F.3d at 1382 ("a preliminary injunction that enforces a valid patent against an infringer does no more than further public policy interest in the patent laws designed to encourage useful inventions by rewarding the inventor with a limited period of market exclusivity") (citation and quotation omitted); *Sanofi-Synthelabo*, 470 F.3d at 1383-84 (district court properly found that the significant public interest in encouraging product development and protecting the exclusionary rights conveyed in patents tipped the scales in plaintiff's favor).  The

public interest is served, therefore, by granting injunctive relief in favor of Belleau and enjoining the Defendants.[1]

## CONCLUSION

For the foregoing reasons, Belleau respectfully requests that the Court issue a temporary restraining order enjoining Defendants, their employees, agents, subsidiaries, affiliates, parents, successors, assigns, officers, servants, attorneys, and any other person in active concert or participation with them, from any conduct that infringes, directly or indirectly, the '646 Patent, including making, selling, distributing, marketing, testing, importing, offering to sell, or otherwise using the AutoPrompter product (or any similarly infringing software product), without the express written authority of Belleau.

Belleau further requests that the Court issue a preliminary injunction:

a) Enjoining Defendants Joe Allen and JoeAllenPro Limited, their employees, agents, subsidiaries, affiliates, parents, successors, assigns, officers, servants, attorneys, and any other person in active concert or participation with them, from any conduct that infringes, directly or indirectly, the '646 Patent, including making, selling, distributing, marketing, testing, importing, offering to sell, or otherwise using a software product called "AutoPrompter" – or any other software application infringing the '646 Patent – within the United States;

b) Ordering that Defendants, their employees, agents, subsidiaries, affiliates, parents, successors, assigns, officers, servants, attorneys, and any other person in active

---

[1] Under Fed. R. Civ. P. 65(c), the Court has wide discretion to determine the appropriate amount of an injunction bond.  In circumstances, such as this, the Court may dispense altogether with the filing of a bond where there is no likelihood of harm to Defendants as a result of wrongful issuance of injunctive relief.  *See Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961); *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2010) (collective cases); *Elite Licensing Inc. v. Thomas Plastics Inc.*, 250 F. Supp. 2d 372, 391 (S.D.N.Y. 2003).

19

concert or participation with them, immediately destroy any copies of the software product called "AutoPrompter" – or any other software application infringing the '646 Patent – in their possession, custody, or control;

c)   Ordering that Defendants, their employees, agents, subsidiaries, affiliates, parents, successors, assigns, officers, servants, attorneys, and any other person in active concert or participation with them, turn over to the Court any proceeds that Defendants have received as a result of their sale of the software product called "AutoPrompter" – or any other software application infringing the '646 Patent; and

d)   Granting Plaintiff such other and further relief as this Court deems just and proper.

New York, New York
June 17, 2018

Respectfully submitted,
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By: _____
Turner P. Smith (TS 8052)
Michael R. Graif (MG 4795)
Nicole M. Mazanitis (NM 1983)
101 Park Avenue
New York, New York 10178
(212) 696-6000

*Attorneys for Plaintiff*
*Belleau Technologies, LLC*

20

32388761