UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

BELLEAU TECHNOLOGIES, LLC,

                Plaintiff,                      18 Civ. 06319 (DLC)

      v.

JOEALLENPRO LIMITED, a foreign corporation;
and JOE ALLEN, as an individual,

                Defendants.

--------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT**

## TABLE OF CONTENTS

Preliminary Statement...................................................................................................1

Jurisdiction and Venue..................................................................................................1

Factual Background .......................................................................................................2

I.      Belleau's '646 Patent and VoiceTrack Scrolling Method .................................2

II.     Defendants' Infringing Conduct .......................................................................3

III.    Belleau's Efforts to Contact and Engage Defendants.......................................4

Argument ......................................................................................................................7

I.      A Default Judgment Against Defendants is Warranted.....................................7

II.     Plaintiff Is Entitled to Permanent Injunctive Relief........................................10

            A.     Plaintiff Has Suffered Irreparable Harm and Will Continue to Suffer Irreparable Harm if Defendants Are Not Permanently Enjoined...............................10

            B.     Plaintiff's Remedies at Law Are Inadequate .............................11

            C.     The Balance of Hardships Tips in Belleau's Favor ...................12

            D.     The Public Interest Demands Permanent Injunctive Relief......................13

III.    Plaintiff Is Entitled to Damages in an Amount of $1,500,000.........................13

            A.     Belleau's Damages as a Result of Defendants' Infringement ................13

            B.     Belleau Is Entitled to Enhanced, Treble Damages....................17

IV.    Belleau Is Entitled to a Recovery of its Attorneys' Fees and Costs ................19

            A.     This Case Should Be Declared "Exceptional"...........................19

            B.     Belleau's Request for its Attorneys' Fees is Reasonable..........................21

            C.     Belleau's Request for Expenses and Costs is Reasonable.........................24

Conclusion ..................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Anacomp, Inc. v. Shell Knob Servs.*,
  No. 93 Civ. 4003, 1994 U.S. Dist. LEXIS 223 (S.D.N.Y. Jan. 7, 1994) .................................. 11

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) .......................................................................................................... 22

*Broadcast Music v. R Bar*,
  919 F. Supp. 656 (S.D.N.Y. 1996) ...................................................................................... 24

*Brunswick Corp. v. U.S.*,
  36 Fed. Cl. 204 (Fed. Cl. 1996) .......................................................................................... 16

*Burlington v. Dague*,
  505 U.S. 557 (1992) .......................................................................................................... 22

*Bywaters v. U.S.*,
  670 F.3d 1221 (Fed. Cir. 2012) .............................................................................. 21, 22, 23

*CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*,
  192 F. Supp. 3d 1279 (M.D. Fla. 2016) .............................................................................. 21

*Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*,
  699 F.3d 230 (2d Cir. 2012) ................................................................................................ 7

*Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983) .......................................................................................... 24

*Cognex Corp. v. Microscan Sys., Inc.*,
  No. 13 Civ. 2027, 2014 U.S. Dist. LEXIS 91203 (S.D.N.Y. June 30, 2014) ......................... 11

*Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech Inc.*,
  492 F. Supp. 2d 600 (E.D. Tex. 2007) ................................................................................ 12

*Complex Sys. Inc. v. ABN AMRO Bank N.V.*,
  No. 08 Civ. 7497, 2014 U.S. Dist. LEXIS 64467 (S.D.N.Y. May 9, 2014) ........................... 11

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) .......................................................................................... 11

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) .......................................................................................................... 10

*Esbin & Alter, LLP v. Zappier*,
  No. 08 Civ. 313, 2010 U.S. Dist. LEXIS 9487 (S.D.N.Y. Feb. 4, 2010) .............................. 11

*Farrar v. Hobby*,
  506 U.S. 103 (1992) .......................................................................................................... 22

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
  790 F.3d 1369 (Fed. Cir. 2015) .......................................................................................... 20

*Gen. Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983) .......................................................................................................... 17

ii

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970), *aff'd* 446 F.2d 295 (2d Cir. 1971) ..................... 15, 16, 17

*Glaxo Group Ltd. v. Apotex, Inc.*,
    64 Fed. Appx. 751 (Fed. Cir. Apr. 22, 2003) ......................................................................... 13

*Global Van Lines, Inc. v. Global Moving Express, Inc.*,
    No. 06 Civ. 3776, 2007 U.S. Dist. LEXIS 60794 (S.D.N.Y. Aug. 20, 2007) ..................... 7, 13

*Gust, Inc. v. AlphaCap Ventures, LLC*,
    Nos. 15 Civ. 6192, 16 Civ. 1784, 2017 U.S. Dist. LEXIS 104411 (S.D.N.Y. July 6, 2017) ... 17

*Healey v. Leavitt*,
    485 F.3d 63 (2d Cir. 2007) ...................................................................................................... 21

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .......................................................................................................... 22, 24

*Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*,
    No. 11 Civ. 7211, 2012 U.S. Dist. LEXIS 103864 (S.D.N.Y. July 25, 2012) ........................ 12

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ................................................................................................. 10

*Jacobson v. Cox Paving Co.*,
    No. 89 Civ. 1786, 1991 U.S. Dist. LEXIS 17787 (D. Ariz. May 16, 1991) ............................ 11

*Jurgens v. CBK, Ltd.*,
    80 F.3d 1566 (Fed. Cir. 1996) ................................................................................................. 18

*Keystone Glob. LLC v. Auto Essentials Inc.*,
    No. 12 Civ. 9077, 2014 U.S. Dist. LEXIS 141044 (S.D.N.Y. Oct. 1, 2014) .......................... 14

*Krevat v. Burgers to Go, Inc.*,
    No. 13 Civ. 6258, 2014 U.S. Dist. LEXIS 131256 (E.D.N.Y. Aug. 5, 2014) .......................... 13

*Laerdal Med. Corp. v. Basic Med. Supply, LLC*,
    No. Civ. Action H-16-35, 2016 U.S. Dist. LEXIS 150246 (S.D. Tex. Oct. 31, 2016) ........... 20

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
    660 Fed. App'x 966 (Fed. Cir. 2016) ................................................................................. 21, 23

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
    24 F. Supp. 3d 329 (S.D.N.Y. 2014) ....................................................................................... 20

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ................................................................................................... 18

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ..................................................................................... 17, 22, 23

*MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*,
    16 Civ. 8103, 2017 U.S. Dist. LEXIS 49540 (S.D.N.Y. Mar. 30, 2017) ................................ 23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ............................................................................................. 19, 20, 21

iii

*Pearson Educ., Inc. v. Vergara*,
　No. 09 Civ. 6832, 2010 U.S. Dist. LEXIS 101597 (S.D.N.Y. Sept. 27, 2010) ...................... 12

*Perez v. Velez*,
　629 F. Supp. 734 (S.D.N.Y. 1985) .................................................................................... 24

*Pfizer, Inc. v. Teva Pharms., USA*,
　429 F.3d 1364 (Fed. Cir. 2005) ................................................................................... 12, 13

*Prest v. Petrodel Resources Ltd.*
　[2013] 3 WLR 1 ................................................................................................................ 10

*Rates Tech., Inc. v. Redfish Telemetrix, Inc.*,
　No. 99 Civ. 4644, 2001 U.S. Dist. LEXIS 23246 (E.D.N.Y. Dec. 19, 2001) ......................... 17

*Read Corp. v. Portec, Inc.*,
　970 F.2d 816 (Fed. Cir. 1992) .................................................................................... 17, 18

*Regeneron Pharms., Inc. v. Merus N.V.*,
　No. 14 Civ. 1650, 2018 U.S. Dist. LEXIS 115661 (S.D.N.Y. June 25, 2018)........................ 23

*Sanofi Synthelabo v. Apotex, Inc.*,
　470 F.3d 1368 (Fed. Cir. 2006) ......................................................................................... 13

*SEB S.A. v. Montgomery Ward & Co., Inc.*,
　77 F. Supp. 2d 399 (S.D.N.Y. 1999) .................................................................................. 13

*SEC v. Boock*,
　No. 09 Civ. 08261, 2011 U.S. Dist. LEXIS 158797 (S.D.N.Y. May 10, 2011)................ 13, 14

*Sensonics, Inc. v. Aerosonic Corp.*,
　81 F.3d 1566 (Fed. Cir. 1996) ........................................................................................... 14

*Sexy Hair Concepts, LLC v. Sexy Hair Inc.*,
　 No. 12 Civ. 3937, 2013 U.S. Dist. LEXIS 142361 (E.D.N.Y. Sept. 11, 2013)...................... 12

*Smithkline Diagnostics. Inc. v. Helena Labs. Corp.*,
　926 F.2d 1161 (Fed. Cir. 1991) ......................................................................................... 15

*Sola Franchise Corp. v. Solo Salon Studios Inc.*,
　No. 14 Civ. 0946, 2015 U.S. Dist. LEXIS 38490 (E.D.N.Y. Feb. 9, 2015)............................ 12

*Spectralytics, Inc. v. Cordis Corp.*,
　649 F.3d 1336 (Fed. Cir. 2011) ......................................................................................... 20

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
　127 F.3d 1462 (Fed. Cir. 1997) ......................................................................................... 17

*Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*,
　954 F. Supp. 2d 145 (E.D.N.Y. 2013) ................................................................................ 11

*Takeda Chem. Indus. v. Mylan Labs., Inc.*,
　No. 03 Civ. 8253, 2007 U.S. Dist. LEXIS 19614 (S.D.N.Y. Mar. 21, 2007) .................. 22, 23

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling U.S., Inc.*,
　699 F.3d 1340 (Fed. Cir. 2012) .................................................................................... 14, 15

iv

*Upjohn Co. v. Medtron Labs, Inc.,*
   751 F. Supp. 416 (S.D.N.Y. 1990) ................................................................ 13

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC,*
   No. 12 Civ. 1285, 2016 U.S. Dist. LEXIS 77612 (D. Del. June 15, 2016) ....... 24, 25

*Veracode, Inc. v. Appthority, Inc.,*
   137 F. Supp. 3d 17 (D. Mass. 2015) .............................................................. 15

*Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,*
   339 F.3d 101 (2d Cir. 2003) ......................................................................... 10

## **Statutes**

28 U.S.C. §§ 1331 ................................................................................................ 1

28 U.S.C. §§ 1338(a) ........................................................................................... 1

28 U.S.C. §§ 1391 ................................................................................................ 1

28 U.S.C. §§ 1961 .............................................................................................. 16

28 U.S.C. §§ 2201 ........................................................................................... 1, 9

28 U.S.C. §§ 2202 ................................................................................................ 1

35 U.S.C. § 1 *et seq.* ........................................................................................... 1

35 U.S.C. § 271 .................................................................................................... 7

35 U.S.C. § 283 .................................................................................................. 10

35 U.S.C. § 284 ............................................................................................. 14, 17

35 U.S.C. § 285 ............................................................................................. 19, 20

## **Rules**

Fed. R. Civ. P. 55 ......................................................................................... 1, 7, 14

v

Plaintiff Belleau Technologies, LLC ("Belleau") respectfully submits this Memorandum of Law in Support of its Motion for a Default Judgment pursuant to Fed. R. Civ. P. 55 against Defendants Joe Allen ("Allen") and JoeAllenPro Limited ("JoeAllenPro," and collectively with Allen, "Defendants") for the causes of action set forth in the Complaint (ECF No. 001).

## PRELIMINARY STATEMENT

On July 12, 2018, Belleau brought this action for injunctive relief and damages under the Patent Act (35 U.S.C. § 1 *et seq.*), and for a declaratory judgment under the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202). Despite Belleau's repeated efforts to engage Defendants, Defendants have failed to appear. Belleau therefore requests that the Court issue a Default Judgment against Defendants, including a permanent injunction prohibiting Defendants from any further infringement of the patent in question. Additionally, as a result of Defendants' willful infringement and bad faith actions, Belleau seeks enhanced damages in the amount of $1,500,000, plus pre- and post-judgment interest. Finally, Belleau requests that the Court deem this case exceptional, and award Belleau its attorneys' fees and costs in the amounts of: (1) $124,720.75 in outside counsel fees; (2) $83,776 in in-house counsel fees; and (3) $881.70 in litigation costs.

## JURISDICTION AND VENUE

Plaintiff brought this action pursuant to the Patent Act, which provides the federal courts with subject matter jurisdiction over patent matters, and pursuant to the Declaratory Judgment Act. *See* Compl. ¶ 5; 28 U.S.C. §§ 1331 and 1338(a); 28 U.S.C. §§ 2201 and 2202. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3) as Defendants are not residents of the United States, and thus may be sued in any judicial district. Compl. ¶ 7.

This Court has personal jurisdiction over Defendants by reason of Defendants' acts of patent infringement that have been committed in this judicial district, and by virtue of their regularly conducted and systematic business contacts in this judicial district. *Id.* ¶ 6. Defendants

1

have purposefully availed themselves of the privilege of conducting business within this judicial district; have established sufficient minimum contacts with this judicial district such that they should reasonably and fairly anticipate being hauled into court here; have purposefully directed activities at residents of this judicial district; and at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.  *Id.*

## FACTUAL BACKGROUND

**I.      Belleau's '646 Patent and VoiceTrack Scrolling Method**

Belleau is the exclusive owner by assignment of U.S. Patent No. 9,953,646 (the "'646 Patent"), which describes a "Method and System for Dynamic Speech Recognition and Tracking of Prewritten Script."  Compl. ¶¶ 11, 19.  The '646 Patent is embodied in numerous teleprompter software applications and goes by the trade name "VoiceTrack."  *Id.* ¶ 20.  VoiceTrack is a core feature of Belleau's line of PromptSmart applications and is a strong differentiator in the minds of consumers.  *See* Declaration of Jeremy S. Sadkin, dated August 20, 2018 (the "J. Sadkin Decl."), ¶ 15, Ex. 4.  Belleau's successful implementation of its patented method (among other reasons) has caused it to rise above the competition; as a result Belleau is currently the leading provider of mobile teleprompter software in the Apple App Store.  Compl., ¶ 8; J. Sadkin Decl., ¶¶ 13, 14.

Belleau's invention has led to substantial growth in the consumer market for teleprompter software *because* the invention makes such products inherently more useful, affordable, and accessible to the average person.  J. Sadkin Decl., ¶ 16, Ex. 4.  Indeed, Belleau has always represented that VoiceTrack is a technological leap forward in teleprompter software and that this advancement is protected by Belleau's '646 Patent.  *Id.* ¶ 16.  As news of Belleau's invention spread, the PromptSmart brand accumulated substantial goodwill.  *Id.* ¶ 17.

The PromptSmart brand is the market leader in consumer-oriented teleprompter software.  *Id.* ¶ 14.  More often than not, PromptSmart Pro, Belleau's flagship product, appears as the number

2

one search result for the term "teleprompter" for software products in the Apple App Store on iPhones and iPads from within the United States. *Id.* ¶ 13.  In addition, PromptSmart products, by a large margin, are more frequently rated and more highly rated than any of Belleau's competitors, including the Defendants' current teleprompter product offerings. *Id.*

## II.    Defendants' Infringing Conduct

At all relevant times, Defendants have been aware of Belleau, its intellectual property, and their own competitive disadvantage. *Id.*, Ex. 7.  But seeking to bridge a competitive gap, and without Belleau's authority or consent, Defendants developed a copycat "AutoPrompter" application that purports to do what only Belleau's patented VoiceTrack system currently does – listen "to your voice as you speak, then accurately scroll your script as you're reading . . . [and] you can even digress from your script and AutoPrompter will politely wait for you to get back on track."  Compl. ¶ 41; J. Sadkin Decl., ¶ 18, Ex. 5.

The AutoPrompter app infringes one or more claims of the '646 Patent under 35 U.S.C. § 271(a) by meeting the limitations of claims 1, 12, 15, and 18.  Compl. ¶¶ 25, 42.  The AutoPrompter's core function is an unauthorized use of Belleau's patented method of dynamic speech recognition and tracking of a pre-written script. *Id.* ¶ 42.  Defendants have asserted that the infringing AutoPrompter application contains smart voice recognition scrolling as its central function, a fact that is corroborated by its AutoPrompter name, which is short for "automated teleprompter." *Id.* ¶ 40.  Defendants have further asserted that the smart voice recognition scrolling contained in the infringing AutoPrompter product "has the ability to listen to your voice as you speak, then accurately scroll your script as you're reading . . . [and] you can even digress from your script and AutoPrompter will politely wait for you to get back on track." *Id.* ¶ 41.

Defendants' use, offer for sale, and/or import the AutoPrompter app in the United States. *Id.* ¶ 38.  Defendants imported the AutoPrompter application into the United States by uploading

3

the app to Apple, a U.S.-domiciled company, for testing, processing, and review in Apple's

TestFlight beta software distribution platform ("TestFlight") and then subsequently in the App

Store.  *Id.* ¶ 39; J. Sadkin Decl., ¶ 21.  Defendants then distributed the infringing AutoPrompter

application to over one thousand U.S.-based consumer beta testers.  Compl. ¶ 39.

On April 2, 2018, Allen sent an email to a distribution list containing the subject header

"Invitation to Beta Test a New Teleprompter App," the body of which explained that the app was

called "AutoPrompter . . . a truly versatile professional Teleprompter app featuring smart voice

recognition scrolling."  J. Sadkin Decl., ¶ 20.  Defendants required prospective testers to apply and

be approved.  *Id.*  The application asked respondents to note whether they had ever used two of

Belleau's PromptSmart applications.  *Id.*  Mr. Sadkin downloaded and used this beta version.  *Id.*

¶ 22.  According to Defendants' July 4, 2018 announcement, the AutoPrompter testing phase had

concluded and the AutoPrompter app was in the App Store for pre-order and would be officially

released on July 18, 2018.  *Id.* ¶ 25, Ex. 6.

Defendants instructed and encouraged consumers to use the infringing AutoPrompter app,

while it was available in the Apple App Store, including through marketing and email activities

and through instructions directing customers on the AutoPrompter's download and use.  Compl.

¶¶ 44, 46; J. Sadkin Decl., ¶ 26, Exs. 5, 10.  Further, during the pendency of this action,

Defendants have continued to market the AutoPrompter app through promotional videos on

YouTube, through Allen's personal Twitter account (@joeallenpro) and the @autoprompter

Twitter account, through the autoprompter.com website, through the autoprompterapp.com

website, and through the joeallenpro.com website.  J. Sadkin Decl., ¶ 26, Ex. 10.

### III.     Belleau's Efforts to Contact and Engage Defendants

On April 23, 2018, Belleau served Defendants (at the joe@joeallenpro.com email address)

with a cease and desist letter; Defendants replied on May 10, 2018, declining to admit patent

infringement, and pressing on with their intention to release the AutoPrompter app.  Compl.
¶ 27-28; J. Sadkin Decl., ¶¶ 23-24, Exs. 8, 9.  Defendants then spoliated critical evidence relied
upon by Belleau in its Complaint by removing blog posts from the joeallenpro.com website.  J.
Sadkin Decl., ¶ 11 n.2, Ex. 3.

On July 5, 2018, Belleau emailed Defendants at the joe@joeallenpro.com email address,
attaching a letter informing them that if the parties could not reach a settlement by July 12, 2018,
Belleau would proceed with filing its complaint.  *See* Affidavit of Nicole M. Mazanitis dated
August 23, 2018 ("Mazanitis Aff."), ¶ 3, Ex. 1.  Defendants never responded to this letter.  *Id.*

On July 12, 2018, Belleau filed its Complaint against Defendants.  *Id.*, ¶ 4, Ex. 2.

On July 13, 2018, in accordance with the Court's Individual Practice Rule 3(k), Belleau
provided Defendants with notice at joe@joeallenpro.com of its intent to file a motion for a
temporary restraining order the following week, and asking if Defendants consented to the
temporary injunctive relief.  *Id.*, ¶ 5, Ex. 3.  If Defendants did not consent, Belleau requested that
Defendants or their counsel advise when they would be available to appear before the Court.  *Id.*
Belleau also attached copies of its Complaint and accompanying documents.  *Id.*

On July 17, 2018, Belleau appeared before the Honorable Laura Swain, requesting that a
temporary restraining order be issued prohibiting Defendants from any further infringement of the
'646 Patent.  *Id.* ¶ 6.  Judge Swain granted Belleau's request, and executed the Order to Show
Cause.  *Id.*, Ex. 4.  Later that day, Belleau provided Defendants with the executed Order to Show
Cause and corresponding papers at the joe@joeallenpro.com email address.  *Id.*, Ex. 5.  Belleau
again attached copies of its Complaint and accompanying documents.  *Id.*  On this date, Belleau
also provided Apple with notice of the temporary restraining order.  *Id.* ¶ 7; J. Sadkin Decl., ¶ 32,
Ex. 13.  Apple did not immediately remove the AutoPrompter app, but notified Defendants of

Belleau's temporary restraining order at two email addresses – joe@joeallenpro.com and joeallenpro@me.com.  J. Sadkin Decl., ¶ 33, Ex. 14.

On July 18, 2018, Belleau filed its Motion for a Temporary Restraining Order and Preliminary Injunction and accompanying documents on PACER, and provided Defendants with the electronically filed versions of the papers and executed Order to Show Cause at joe@joeallenpro.com and joeallenpro@me.com.  Mazanitis Aff., ¶ 8, Ex. 6.  Later that day, Allen responded to Apple's email, claiming to be unaware of the temporary restraining order, and stating that he will have his attorney look into the issue with immediate attention.  *Id.* ¶ 8; J. Sadkin Decl., ¶ 36, Ex. 15.  Neither Defendants nor their counsel directly contacted Belleau.  Mazanitis Aff., ¶ 8.

On July 19, 2018, counsel for Belleau served Defendants via Federal Express with true and correct copies of the:  (a) Summonses to Defendants; (b) Complaint and accompanying exhibits; (c) Civil Cover Sheet; (d) Plaintiff's Rule 7.1 Statement; (e) executed Report on the Filing or Determination of an Action Regarding a Patent or Trademark; (f) Electronic Case Filing Rules and Instructions for the United States District Court for the Southern District of New York; (g) Individual Practices in Civil Cases of the Honorable Denise Cote; and (h) Individual Practices in Civil Cases of the Honorable Katharine H. Parker, at the 48 Bowhill Way, Harlow, Essex, CM20 1FH, United Kingdom address.  *Id.*, ¶ 9, Ex. 7.  Federal Express tracking emails confirmed receipt of these documents by Defendants on July 23, 2018.  *Id.*

On July 20, 2018, Belleau forwarded the Court's correspondence to the parties to the joe@joeallenpro.com and joeallenpro@me.com email addresses, notifying Defendants of the case re-assignment to Judge Cote, and of the scheduling change for a status conference from July 23, 2018 at 10:00 a.m. to 2:30 p.m.  *Id.* ¶ 10, Ex. 8.  Later that day, Apple notified Belleau that the AutoPrompter app had been removed from the Apple Store.  *Id.*; J. Sadkin Decl., ¶ 41, Ex. 16.

6

On July 23, 2018, Belleau forwarded the Amended Order to Show Cause to Defendants at joe@joeallenpro.com and joeallenpro@me.com. *Id.* ¶ 11, Ex. 9.

On July 27, 2018, Belleau emailed Defendants at joe@joeallenpro.com and joeallenpro@me.com a letter from Ms. Mazanitis to the Court regarding the upcoming preliminary injunction hearing and the Court's Order regarding live witnesses at the hearing. *Id.* ¶ 12; Ex. 10.

On July 31, 2018, Belleau sent the Order Granting Plaintiff's Motion for a Preliminary Injunction, the Order regarding default judgment procedures, and the Notice of Pretrial Conference, to Defendants at joe@joeallenpro.com and joeallenpro@me.com. *Id.* ¶ 13; Ex. 11.

Defendants have been completely unresponsive to Belleau's communications, and have failed to abide by Orders from this Court, including the Court's Preliminary Injunction Order. *Id.* ¶ 14; Sadkin Decl., ¶¶ 31, 36-59.

## ARGUMENT

### I.    A Default Judgment Against Defendants is Warranted

Pursuant to Fed. R. Civ. P. 55(b), after the Clerk of the Court issues a certificate of default against a party, the court may enter default judgment. "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). When a court considers a motion to enter default judgment, "plaintiff is entitled to all reasonable inferences from the evidence presented." *Global Van Lines, Inc. v. Global Moving Express, Inc.*, No. 06 Civ. 3776, 2007 U.S. Dist. LEXIS 60794, at *3 (S.D.N.Y. Aug. 20, 2007).

Liability for patent infringement is established when a defendant "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271. Preliminarily, the Complaint explains that Belleau is the exclusive owner by assignment of the

'646 Patent and possesses all rights of recovery under the '646 Patent, including the right to sue and the right to recover damages for infringement of claims of the '646 Patent.  Compl. ¶ 19.

Additionally, the Complaint describes that the AutoPrompter app infringes one or more claims of the '646 Patent in accordance with 35 U.S.C. § 271(a) by meeting the limitations of claims 1, 12, 15, and 18.  Compl. ¶¶ 25, 42.  The AutoPrompter's core function is none other than an unauthorized use of Belleau's patented method of dynamic speech recognition and tracking of a pre-written script (i.e., VoiceTrack).  *Id.* ¶ 42.  Defendants have asserted that the infringing AutoPrompter application contains smart voice recognition scrolling as its central function, a fact that is further corroborated by the name of the infringing product – AutoPrompter.  *Id.* ¶ 40.  Defendants have further asserted that the smart voice recognition scrolling contained in the infringing AutoPrompter product "has the ability to listen to your voice as you speak, then accurately scroll your script as you're reading . . . [and] you can even digress from your script and AutoPrompter will politely wait for you to get back on track."  *Id.* ¶ 41.

Belleau's Complaint details Defendants' willful infringing acts.  Indeed, Defendants directly infringed the '646 Patent by using, offering for sale, and/or importing the AutoPrompter app in the United States.  *Id.* ¶ 38.  Defendants uploaded the AutoPrompter app to Apple, a U.S.-domiciled company, for testing, processing, and review in TestFlight and then subsequently in the App Store.  *Id.* ¶ 39.  Defendants then distributed the infringing AutoPrompter application to over one thousand U.S.-based consumer beta testers.  *Id.*

Defendants also indirectly infringed the '646 Patent by knowingly encouraging current and potential customers to directly infringe one or more claims of the '646 Patent by, including without limitation, instructing and encouraging users to use the infringing AutoPrompter app, including through its marketing and email activities and through its instructions directing

8

customers on the AutoPrompter's download and use.  *Id.* ¶ 44.  Defendants also marketed the AutoPrompter app through coordinated campaigns in the App Store, promotional videos on YouTube, Allen's personal twitter account (@joeallenpro), and email promotions.  *Id.* ¶ 46. Defendants' customers directly infringed the '646 Patent through their use of the app.  *Id.*

   The Complaint further describes the relationship between Defendants, justifying a declaration that:  (1) Allen is the alter ego of JoeAllenPro; (2) Allen abused his position by causing JoeAllenPro to willfully infringe Belleau's intellectual property rights; and (3) by so doing he is personally liable, jointly and severally, for all damages suffered by Belleau.  28 U.S.C. § 2201; Compl. ¶¶ 54, 67.  An actual and immediate controversy exists between Belleau and Defendants as Defendants have infringed the '646 Patent.  *Id.* ¶ 54.

   Allen, who is approximately 25 years in age and claims to have launched "hundreds" of mobile applications, is the sole shareholder and director of JoeAllenPro, an entity named after Allen.  *Id.* ¶¶ 55, 60.  Allen incorporated JoeAllenPro in February of 2016.  *Id.* ¶ 63. Allen was offering software products such as the Teleprompter Premium from his personal (not corporate) Apple developer account at least throughout all of 2015 and early 2016.  *Id.*

   The evidence demonstrates Allen's complete domination and control of JoeAllenPro:  (1) the registered address of JoeAllenPro is located in a suburban residential neighborhood outside of London, where Allen resides; (2) Allen states on the joeallenpro.com blog that "I do all of the development and programming work myself"; (3) Allen signs all of JoeAllenPro's communications; (4) Allen conflates himself with the company on the joeallenpro.com website and in JoeAllenPro corporate communications by frequent use of the first person pronouns "I" and "me," and by using a Twitter handle for his personal account that is named @joeallenpro; (5) a picture of Allen, which is included in the email signature of

9

JoeAllenPro's communications, appears in every browser tab opened to the joeallenpro.com website; (6) JoeAllenPro only purports to hold title to software assets belonging to Allen; and (7) no other person has yet to publicly represent himself as having authority over JoeAllenPro, on the joeallenpro.com website or through JoeAllenPro email campaigns. *Id.* ¶¶ 56-59, 61-62, 64. Based on the foregoing, Allen is the alter ego of JoeAllenPro by virtue of his complete domination and control of JoeAllenPro, and by Allen's attempted evasion of liability by causing JoeAllenPro to willfully infringe Belleau's '646 Patent. *See Prest v. Petrodel Resources Ltd.* [2013] 3 WLR 1.

## II.   Plaintiff Is Entitled to Permanent Injunctive Relief

The Court may "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To attain relief, the plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010). Each of these elements is readily met.

### A.   Plaintiff Has Suffered Irreparable Harm and Will Continue to Suffer Irreparable Harm if Defendants Are Not Permanently Enjoined

Irreparable harm is a "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003). Here, Belleau will suffer irreparable harm if Defendants are not permanently enjoined. First, Belleau and Defendants are direct competitors vying for the business of the same group of customers. *See* J. Sadkin Decl., ¶ 11. Enjoining a direct competitor from adopting an infringing software system in a competing product is necessary to prevent irreparable

10

harm.  *See Cognex Corp. v. Microscan Sys., Inc.*, No. 13 Civ. 2027, 2014 U.S. Dist. LEXIS 91203, *3-4 (S.D.N.Y. June 30, 2014).  Belleau has a valid expectation of exclusivity and should not be forced to compete with knock-offs of its own invention.  *See Douglas Dynamics*, *LLC v. Buyers Prods*. *Co*., 717 F.3d 1336, 1344-45 (Fed. Cir. 2013).  Second, Belleau is in jeopardy of losing its position as market leader and the advantage of being a pioneer, both of which constitute irreparable harm.  *See Esbin & Alter, LLP v. Zappier*, No. 08 Civ. 313, 2010 U.S. Dist. LEXIS 9487, at *6-7 (S.D.N.Y. Feb. 4, 2010); *Anacomp, Inc. v. Shell Knob Servs.*, No. 93 Civ. 4003, 1994 U.S. Dist. LEXIS 223, at *17-18 (S.D.N.Y. Jan. 7, 1994).  Any loss of brand name recognition and potential goodwill that Belleau may suffer constitutes irreparable harm.  *See Complex Sys. Inc. v. ABN AMRO Bank N.V.,* No. 08 Civ. 7497, 2014 U.S. Dist. LEXIS 64467, *38, 43 (S.D.N.Y. May 9, 2014).  Finally, if Defendants are not enjoined, other potential competitors will be encouraged to distribute "knock-off" apps, flooding the market.  *See Jacobson v. Cox Paving Co.*, No. 89 Civ. 1786, 1991 U.S. Dist. LEXIS 17787, at *45, 49 (D. Ariz. May 16, 1991).

Because Belleau faces the prospect of losses that are difficult to measure and to replace, and because such losses are inconsistent with Belleau's legal right to exclusively use, sell, and commercially exploit the '646 Patent, money damages are an inadequate remedy and Belleau will suffer irreparable injury absent the issuance of a permanent injunction.

### B.    Plaintiff's Remedies at Law Are Inadequate

There is no adequate remedy at law in actions, such as this one, involving unresponsive defendants.  "A defendant's refusal to appear in [the] action demonstrates the inadequacy of plaintiff's remedies at law." *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 158 (E.D.N.Y. 2013).  Defendants provide no assurances against their continued infringing activity so a plaintiff cannot surely and adequately be compensated for its injuries.  *Id.*  Rather, "the default gives rise to the inference that the Defendant

11

is willing to continue to infringe upon Plaintiffs'" intellectual property rights.  *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14 Civ. 0946, 2015 U.S. Dist. LEXIS 38490, at *40 (E.D.N.Y. Feb. 9, 2015); *see also Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832, 2010 U.S. Dist. LEXIS 101597, at *12 (S.D.N.Y. Sept. 27, 2010) (with defaults, courts may infer that a defendant is willing to, or may continue its infringement); *Sexy Hair Concepts, LLC v. Sexy Hair Inc.*, No. 12 Civ. 3937, 2013 U.S. Dist. LEXIS 142361, at *9 (E.D.N.Y. Sept. 11, 2013) (same).

Here, there is a clear indication that Defendants are willing to continue to infringe the '646 Patent, absent permanent injunctive relief.  Defendants have been completely unresponsive to Belleau's communications, and have failed to abide by Orders from this Court, including the Court's Preliminary Injunction Order.  Mazanitis Aff., ¶ 14; Sadkin Decl., ¶¶ 31, 36-59.  A permanent injunction is necessary to prevent any further infringement of the '646 Patent.[1]

### C.    The Balance of Hardships Tips in Belleau's Favor

The balance of hardships tips in Belleau's favor.  Belleau has invested extensive time, labor, skills, and expenditures in developing its product and has diligently worked to protect its business, reputation, and patent.  Declaration of Eric Sadkin ("E. Sadkin Decl."), dated August 20, 2018, ¶ 5.  On the other hand, it is well-settled that "[a]n alleged infringer's loss of market share and customer relationships, without more, does not rise to the level necessary to overcome the loss of exclusivity experienced by a patent owner due to infringing conduct."  *Pfizer, Inc. v. Teva Pharms., USA*, 429 F.3d 1364, 1382 (Fed. Cir. 2005); *accord Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11 Civ. 7211, 2012 U.S. Dist. LEXIS 103864, *56 (S.D.N.Y. July 25, 2012);

---

[1] Further, if the AutoPrompter is allowed onto the market, this release will saturate the market for Belleau's invention, making it impossible to determine the portions of the market Belleau would have secured but for the Defendants' infringing conduct and the damage done to Belleau's brand recognition and goodwill.  *See Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech Inc.*, 492 F. Supp. 2d 600, 605 (E.D. Tex. 2007); *see J.* Sadkin Decl. ¶ 11.

*Upjohn Co. v. Medtron Labs, Inc.*, 751 F. Supp. 416, 430 (S.D.N.Y. 1990); *Glaxo Group Ltd. v. Apotex, Inc.*, 64 Fed. Appx. 751, 756 (Fed. Cir. Apr. 22, 2003); *SEB S.A. v. Montgomery Ward & Co., Inc.*, 77 F. Supp. 2d 399, 405 (S.D.N.Y. 1999).

Additionally, the balance of hardships further tips in Belleau's favor as Defendants are in default and unlikely to cease their infringing activity.  *See Krevat v. Burgers to Go, Inc.*, No. 13 Civ. 6258, 2014 U.S. Dist. LEXIS 131256, at *26 (E.D.N.Y. Aug. 5, 2014) (balance of hardship weighed in the plaintiff's favor when defendant's "failure to . . . participate in this action, even after the entry of default, further demonstrates that it is unlikely to cease its infringing activity"). Thus, a balancing of the parties' respective potential hardships favors Belleau.

### D.      The Public Interest Demands Permanent Injunctive Relief

Consideration of the public interest weighs clearly in favor of Belleau.  No legitimate public interest would be served by Defendants' distribution of infringing products.  Indeed, in patent infringement cases, there is a compelling, intrinsic public interest in protecting rights secured by valid patents.  *See Pfizer*, 429 F.3d at 1382 (citation and quotation omitted); *Sanofi Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383-84 (Fed. Cir. 2006).  The public interest is served, therefore, by granting injunctive relief in favor of Belleau and permanently enjoining Defendants.

### III.      Plaintiff Is Entitled to Damages in an Amount of $1,500,000

### A.      Belleau's Damages as a Result of Defendants' Infringement

Belleau should be awarded its compensatory damages, totaling $500,000.  A default judgment in an action establishes liability, but is not a concession of damages.  *See Global Van Lines, Inc.*, 2007 U.S. Dist. LEXIS 60794, at *5 (citation omitted).  "Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages."  *SEC v. Boock*, No. 09 Civ. 08261, 2011 U.S. Dist. LEXIS 158797, at *23 (S.D.N.Y. May 10, 2011) ("[A] hearing is

13

unnecessary . . . as the documents before the Court provide a sufficient basis from which to

evaluate the fairness of the disgorgement sought by the SEC . . . and as [defendant] has submitted

nothing in response, nor requested a hearing.").  "Although the Court may hold a hearing to assess

the amount of damages . . . that should be awarded on a default . . . the Second Circuit has

consistently held that [b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is

necessary to the discretion of the district court[.]"  *Id.* at *24 (internal citations and quotations

omitted).  Of particular pertinence here, "when damages cannot be ascertained with precision

because the evidence available from the infringer is inadequate, any doubts must be resolved

against the infringer."  *Keystone Glob. LLC v. Auto Essentials Inc.*, No. 12 Civ. 9077, 2014 U.S.

Dist. LEXIS 141044, at *7 (S.D.N.Y. Oct. 1, 2014) (citing *Sensonics, Inc. v. Aerosonic Corp.*, 81

F.3d 1566, 1572 (Fed. Cir. 1996)).

        Damages for patent infringement must be "adequate to compensate for the

infringement, but in no event less than a reasonable royalty for the use made of the invention by

the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.  The patent

owner bears the burden of proving damages.  *See Transocean Offshore Deepwater Drilling, Inc. v.

Maersk Drilling U.S., Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012).  Two categories of infringement

compensation are the patentee's lost profits and the reasonable royalty the patentee would have

received through arms-length negotiation.  *Id.*  "The [reasonable] royalty may be based upon an

established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations

between the plaintiff and defendant."  *Id.* (citation omitted).  The hypothetical negotiation seeks to

establish the terms of a license agreement the parties would have reached had they negotiated at

arms-length when infringement began, here, April 2, 2018.  *Id.*  An upfront licensing fee or

payment may be awarded under this form of damages.  *Id.*

14

Belleau should be awarded the upfront licensing fee – $500,000 – that it would have negotiated at the start of the infringement in an arms-length transaction with Defendants, in line with the factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *aff'd* 446 F.2d 295 (2d Cir. 1971), and recognized by the Federal Circuit (*Smithkline Diagnostics. Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1168 (Fed. Cir. 1991)). *See also Transocean Offshore Deepwater Drilling*, 699 F.3d at 1358-59 (upholding jury's damages award of upfront $15 million payment and reversing the district court's judgment as a matter of law that had overridden such award). Belleau would have insisted on an upfront licensing fee, versus a royalty over time. E. Sadkin Decl., ¶ 13.

First, Belleau does not currently license the technology in the '646 Patent; any license to Defendants would have been the first of its kind, and to a competitor competing in the same territory and in the same line of business. *Id.* ¶¶ 14, 16, 21; *Georgia-Pacific Corp.*, 318 F.Supp. at 1120 (third and fifth factors are "the nature and scope of the license, as exclusive or non-exclusive" and "the commercial relationship between the licensor and licensee, such as, whether they are competitors"). Therefore, from a business standpoint, any upfront payment for use of the '646 Patent would have been substantial. *See* E. Sadkin Decl., ¶¶ 14, 15, 22. Belleau would not have considered an upfront royalty less than $500,000. *Id.*; *see also Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 73 (D. Mass. 2015) (licensor agreed to pay approximately $523,000 as an upfront payment where both licensor and licensee were "unfunded or underfunded startups seeking to obtain intellectual property rights to pursue their business ventures").

Second, Belleau has not licensed the '646 Patent, and had no plans of licensing it. *Id.* ¶¶ 14, 17; *Georgia-Pacific Corp.*, 318 F.Supp. at 1120 (fourth factor is "the licensor's established policy and marketing program to maintain his patent monopoly by not licensing others

15

to use the invention or by granting licenses").  Belleau has had a policy of not licensing its technology in an area where it occupies a controlling market position.  E. Sadkin Decl., ¶ 17.  In a hypothetical negotiation, if Belleau would have licensed the '646 Patent to a competitor, it would have been for a substantial amount, but not less than $500,000.  *Id.* ¶¶ 14, 15, 22.

Third, the technology embodied in the '646 Patent resides at the core of the AutoPrompter product, therefore making a license valuable and key to any hypothetical success of the AutoPrompter product.  *Id.* ¶ 18; *Georgia-Pacific Corp.*, 318 F.Supp. at 1120 (sixth, eleventh, and thirteenth factors are "the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor . . . ; and the extent of such derivative or convoyed sales", "the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use", and "the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer").  Because the '646 Patent is the key component to the AutoPrompter product, an upfront payment would have had to have been substantial.  E. Sadkin Decl., ¶¶ 15, 22.

Fourth, Belleau's PromptSmart products are highly successful, due in large part to the technology in the '646 Patent.  *Id.* ¶ 19; *Georgia-Pacific Corp.*, 318 F.Supp. at 1120 (eighth factor is "the established profitability of the product made under the patent; its commercial success; and its current popularity").  Additionally, the technology in the '646 Patent meets the exact specifications required by Defendants, militating in favor of a higher upfront payment.  *Id.* ¶ 18; *Brunswick Corp. v. U.S.*, 36 Fed. Cl. 204, 215 (Fed. Cl. 1996) ("an invention's profitability and commercial success, especially for pioneer patents with specific applications, allow the . . . licensor to come to the hypothetical negotiating table with a strong bargaining position").

16

Finally, the '646 Patent provided a technological leap from previous teleprompter technology, which contained far less sophisticated methods of scrolling.  E. Sadkin Decl., ¶ 20; *Georgia-Pacific Corp.* 318 F.Supp. at 1120 (ninth and tenth factors are "the utility and advantages of the patent property over the old modes or devices" and "the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention").  Indeed, the technology embodied in the '646 Patent provides a large benefit to end-users of the inventions.  E. Sadkin Decl., ¶ 20.

Based on these factors and the hypothetical negotiation model, Belleau should be awarded damages totaling the upfront licensing fee that it would have negotiated with Defendants at the start of the infringement – $500,000 plus interest.[2]

### B.    Belleau Is Entitled to Enhanced, Treble Damages

Belleau's compensatory damages of $500,000 should be trebled as a result of Defendants' willful infringement and bad faith conduct.  35 U.S.C. § 284 (a court can enhance damages up to three times when there is a finding of willful infringement or bad faith); *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1468-69 (Fed. Cir. 1997).  "The paramount determination in deciding enhancement and the amount thereof is the egregiousness of the defendants' conduct based on all the facts and circumstances."  *Read Corp. v. Portec, Inc.*, 970

---

[2] Absent some justification, prejudgment interest should "be awarded where necessary to afford the plaintiff full compensation for the infringement."  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654, 657 (1983).  Here, no such justifications exist, and prejudgment interest, set at the interest rate set by New York C.P.L.R. § 5004 of 9%, compounded quarterly, should be awarded in the amount of $94,050.  *See Gust, Inc. v. AlphaCap Ventures, LLC*, Nos. 15 Civ. 6192, 16 Civ. 1784, 2017 U.S. Dist. LEXIS 104411, at *17 (S.D.N.Y. July 6, 2017) (Cote, J.) (9% interest rate); *Rates Tech., Inc. v. Redfish Telemetrix, Inc.*, No. 99 Civ. 4644, 2001 U.S. Dist. LEXIS 23246, at *22 (E.D.N.Y. Dec. 19, 2001) (quarterly compounding).  Post-judgment interest on the entire judgment, awarded from the date of final judgment and set at "a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment" is also proper here.  28 U.S.C. § 1961; *Mathis v. Spears*, 857 F.2d 749, 759-60 (Fed. Cir. 1988).

32674658

F.2d 816, 826 (Fed. Cir. 1992), abrogated on other grounds *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995) (en banc); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571 (Fed. Cir. 1996) ("where one continues his infringing activity, and fails to investigate and determine . . . that he possesses reasonable defenses . . . the infringement is in bad faith").

Factors courts consider in deciding whether to enhance damages include: (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior in the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by defendant; (8) defendant's motivation for harm; (9) whether defendant attempted to conceal its misconduct. *Read Corp.*, 970 F.2d at 827.

All factors weigh heavily in favor of an enhancement of Belleau's damages. First, Defendants deliberately copied the '646 Patent. Defendants were well-aware of the Patent, and it is inconceivable that Defendants would have inadvertently utilized the technology embodied therein. J. Sadkin Decl., ¶¶ 5, 23-24, Exs. 7-9. Second, there is no evidence that Defendants investigated the scope of the Patent, or that they formed a good faith belief that the AutoPrompter did not infringe the Patent. *Id.* ¶ 24. Third, Defendants' conduct during this litigation has been one of reckless disregard of both Belleau's patent rights and the Orders of this Court. *Id.* ¶¶ 11 n.2, 31, 36-59. As detailed in the J. Sadkin Declaration, Defendants have evaded the requirements of the Orders imposed against them, frustrated Belleau's rights and entitlement to relief, spoliated evidence of such misconduct, caused undue delay, and rendered ineffectual the Orders of this Court. *Id.* Fourth, Defendants' size and financial condition is unclear as they have mounted no defense or presented any evidence. Fifth, as Defendants have defaulted and failed to appear in any

18

way, the outcome of this close is not close; indeed the scale is tipped and is entirely in Belleau's

favor.  <u>Sixth and seventh</u>, Defendants have directly and indirectly infringed the '646 Patent

continuously at least since April 2, 2018, and have taken no remedial action, even after being so

ordered by the Court.  *Id.* ¶¶ 31, 36-59.  <u>Eighth and nine</u>, Defendants' motivation for harm was

financial – Defendants planned on profiting off the misappropriation of Belleau's valuable

intellectual property.  Defendants attempted to conceal their misconduct by claiming to refer the

matter to purported counsel and by ignoring this Court's Orders.  *Id.*  In light of these factors,

Belleau respectfully requests that the Court enhance its damages threefold, to $1,500,000.

## IV.   Belleau Is Entitled to a Recovery of its Attorneys' Fees and Costs

This case is "exceptional" and Belleau should be entitled to a recovery of its

reasonable attorneys' fees and costs, which total:  (1) $124,720.75 in outside counsel fees;

(2) $83,776 in in-house counsel fees; and (3) $881.70 in litigation expenses and costs.  Mazanitis

Aff., ¶¶ 16-25, Ex. 13; J. Sadkin Decl., ¶ 9.

### A.   This Case Should Be Declared "Exceptional"

Section 285 provides that "[t]he court in exceptional cases may award reasonable

attorney fees to the prevailing party."  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the

Supreme Court eschewed the former interpretation of Section 285, and articulated a new, more

flexible standard by which to assess whether a case is "exceptional."  The Court held that:

> an "exceptional" case is simply one that stands out from others with respect to ***the
> substantive strength of a party's litigating position*** . . . ***or the unreasonable
> manner in which the case was litigated***.  District courts may determine whether a
> case is "exceptional" in the case-by-case exercise of their discretion, considering
> the totality of the circumstances.

134 S. Ct. 1749, 1756 (2014) (emphasis added).

In deploying the totality of the circumstances test, the Supreme Court directed

courts to analyze factors such as "frivolousness, motivation, objective unreasonableness . . . and

19

the need . . . to advance considerations of compensation and deterrence." *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 335 (S.D.N.Y. 2014) (Cote, J.) (citation and quotation marks omitted).  "[I]f a case 'stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated,' it is 'exceptional' under § 285." *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1372 (Fed. Cir. 2015) (citation omitted).  Further, attorneys' fees may be awarded for "willful disobedience of a court order" or "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons[.]"  *Octane Fitness*, 134 S. Ct. at 1758.  Finally, entitlement to fees under Section 285 need only be proven by a preponderance of the evidence.[3]  *Id.*

        Belleau's litigation position is strong on both the law and the facts, evidenced by the Court's granting of a temporary restraining order and preliminary injunction.  *See* Mazanitis Aff., ¶¶ 6, 13; J. Sadkin Decl., ¶ 30.  Moreover, Defendants have willfully skirted any attempts at settling this matter by disregarding two of Belleau's cease and desist letters.  Mazanitis Decl., ¶ 14; J. Sadkin Decl., ¶¶ 31, 36-59.  Defendants have also disregarded all Orders issued by this Court, and have neglected to hire counsel or provide any indication that they intend to mount a defense. *Id.*  In situations such as this, a fee award is justified against defendants that knowingly disregard cease and desist notices, forcing a plaintiff to bring suit to prevent the defendants' pattern of infringement, and subsequently ignored court orders.  *See Laerdal Med. Corp. v. Basic Med. Supply, LLC*, No. Civ. Action H-16-35, 2016 U.S. Dist. LEXIS 150246, at *12 (S.D. Tex. Oct. 31, 2016) ("Even after three separate cease and desist letters, an email from the Defendants

---

[3]  In cases where there has been a finding of willfulness, the trial court must, in denying fees, explain why the case is not "exceptional" within the meaning of Section 285.  *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011) (citations omitted).

acknowledging the March 30, 2015 cease and desist letter, and the initiation of this lawsuit, Laerdal claims that the infringement has continued. . . . This court finds this case is exceptional by virtue of the Defendants's default and the continued infringement[.]"); *CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*, 192 F. Supp. 3d 1279, 1284 (M.D. Fla. 2016) ("the Court is especially troubled by [defendant's] decision to continue to infringe the [plaintiff's marks] despite years of pre-suit notification and communication, initiation of a federal lawsuit, the entry of default judgment, and a Court-issued injunction").

Compensating Belleau in such an exceptional case will have the appropriate deterrent effect for such unreasonable conduct, and will ward against continued or subsequent infringement that could require Belleau to again seek assistance from the Court. *See Octane Fitness*, 134 S.Ct. 1749, n.6 (courts should consider the "need in particular circumstances to advance considerations of compensation or deterrence"). Moreover, Defendants possessed a pecuniary motive to pirate Belleau's intellectual property and have refused to comply with Belleau's demands or with the orders of this Court. *Id.* (courts should consider factors such as frivolousness, motivation, and objective unreasonableness). Therefore, Defendants' conduct justifies this case as exceptional, and supports an award of attorneys' fees to Belleau.

### B. Belleau's Request for its Attorneys' Fees is Reasonable

In determining an attorneys' fees award, courts use the "lodestar" number – or, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007); *see also Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 660 Fed. App'x 966, 972 (Fed. Cir. 2016) ("attorney's fee awards are calculated using the lodestar method", including if the case qualified as "exceptional"); *Bywaters v. U.S.*, 670 F.3d 1221, 1229 (Fed. Cir. 2012) ("there is a strong presumption that the lodestar figure represents a reasonable attorney fee") (internal quotations omitted).

21

There is a "strong presumption" that the lodestar method is reasonable, *Burlington v. Dague*, 505 U.S. 557, 562 (1992), but the district court may then "adjust [the] lodestar calculation by other factors." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).  Specifically, courts consider the following factors (when applicable) in determining the reasonableness of a fee award:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 429-30 n.3 (1983); *Mathis*, 857 F.2d at 755.  "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Takeda Chem. Indus. v. Mylan Labs., Inc.*, No. 03 Civ. 8253, 2007 U.S. Dist. LEXIS 19614, at *8 (S.D.N.Y. Mar. 21, 2007) (Cote, J.) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  Here, the *Hensley* factors confirm the reasonableness of Belleau's requested fees, which total:  (1) $124,720.75 in outside counsel fees; and (2) $83,776 in in-house counsel fees.  Mazanitis Aff., ¶¶ 16-24, Ex. 13; J. Sadkin Decl., ¶ 9.

Factors 1-3:  Patent cases, particularly ones involving complex technology, generally require significant time and labor.  Indeed, cases involving new technologies, such as this one, present new and challenging questions of law and fact.  *See, e.g., Takeda Chem. Indus.*, 2007 U.S. Dist. LEXIS 19614, at *13-15.

Factors 5 and 12:  The customary fee for a patent case further supports the reasonableness of Belleau's requested fees.  To determine what constitutes a "reasonable" hourly rate, courts consider the "prevailing market rates in the relevant community." *Bywaters*, 670 F.3d at 1232 (citation omitted); *see also Large Audience Display*, 660 Fed. App'x at 972.  The "relevant

22

community" is "based upon the prevailing market rate of the forum court . . . or the prevailing market rate of the geographic location where the attorney is based." *Bywaters*, 670 F.3d at 1233 (internal citation and quotations omitted).  Courts should also examine "the attorneys' comparable skill, experience, and reputation." *Large Audience Display*, 660 Fed. App'x at 972.

Further, courts have relied upon the Report of the Economic Survey prepared by the American Intellectual Property Law Association in assessing this factor.  *See Takeda Chem. Indus.*, 2007 U.S. Dist. LEXIS 19614, at *9; *Mathis*, 857 F.2d at 756.  The AIPLA Survey 2017 shows relevant billing rates from New York IP attorneys for 2016 (Mazanitis Aff., Ex. 14):

|  | Mean | Median | Third Quartile (75%) | 90th Percentile |
|---|---|---|---|---|
| **Partner** | $582 | $540 | $705 | $930 |
| **Associate** | $461 | $413 | $610 | $775 |

These rates are in-line with findings by courts in this district.  *See, e.g., MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, 16 Civ. 8103, 2017 U.S. Dist. LEXIS 49540, at *8 (S.D.N.Y. Mar. 30, 2017) (associate rates of $569-$753/hour and partner rates of $874-$1,048/hour were "reasonable" for a commercial litigation that was "not particularly complex"); *Regeneron Pharms., Inc. v. Merus N.V.*, No. 14 Civ. 1650, 2018 U.S. Dist. LEXIS 115661, at *10-17 (S.D.N.Y. June 25, 2018) (associate rates in patent case of $450-$965/hour and partner rates of $ $775-$1355/hour were reasonable).  Here, Mr. Smith's 2018 hourly rate of $990 and Ms. Mazanitis' 2018 hourly rate of $680 are well in-line with the standards of the industry. Mr. Smith has over 35 years' experience as a litigator, with significant experience in intellectual property matters.  Mazanitis Aff., ¶¶ 22-23.  Ms. Mazanitis has been a litigator for eight years, with a focus on intellectual property litigation.  *Id.*  Mr. Smith and Ms. Mazanitis have together worked on dozens of intellectual property litigations, including patent actions and actions in which their clients have obtained temporary restraining orders and preliminary injunctions.  *Id.*

23

Additionally, fees for in-house counsel work are recoverable.  *See, e.g., Broadcast Music v. R Bar*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996); *Perez v. Velez*, 629 F. Supp. 734, 737-38 (S.D.N.Y. 1985).  Mr. Sadkin, Belleau's in-house counsel, spent a significant amount of time conducting factual and legal research before retaining outside counsel, and advised on the case after outside counsel was retained.  J. Sadkin Decl., ¶¶ 6-10.  As Mr. Sadkin and Ms. Mazanitis graduated law school the same year, Belleau requests that Ms. Mazanitis' hourly rate of $680 be applied to Mr. Sadkin's time as well.  *See Broadcast Music v. R Bar*, 919 F. Supp. at 661.

Factors 7 and 8:  The time limitations imposed by the circumstances, the amount involved, and the results obtained also heavily weigh in favor of the reasonableness of fees. Because of the nature of the Defendants' infringing conduct, and the imminent release of the AutoPrompter product on July 18, 2018, time was of the essence in filing the Complaint and obtaining injunctive relief.  The results obtained further confirm the reasonableness of the award, as Defendants were first temporarily restrained from any conduct infringing the '646 Patent, and later preliminary enjoined from engaging in the same conduct.  Mazanitis Aff., ¶¶ 6, 13.

Factor 9:  Belleau's outside counsel staffed this case extremely leanly, with the majority of the work being performed by Ms. Mazanitis, a senior litigation and intellectual property associate, under the guidance of partner, Turner Smith.  Mazanitis Aff., ¶ 23, Ex. 13.

Therefore, in accordance with the lodestar method and the factors set forth in *Hensley*, Belleau's attorneys' fees are reasonable and should be awarded to Belleau.

### C.    Belleau's Request for Expenses and Costs is Reasonable

An award of fees under Section 285 should include reasonable expenses and costs incurred in providing legal services related to the suit.  *See Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).  These costs here include expenses for filing fees, postage, and transcription services.  *See Vehicle Interface Techs., LLC v. Jaguar Land Rover N.*

24

*Am., LLC*, No. 12 Civ. 1285, 2016 U.S. Dist. LEXIS 77612, at *14 (D. Del. June 15, 2016)

(awarding under § 285 expenses "related to . . . courier, filing fees . . . [and] transcripts").

Recoverable costs and expenses in this case amount to $881.70.  Mazanitis Aff., ¶ 25.[4]

### CONCLUSION

Defendants Joe Allen and JoeAllenPro have failed to properly answer or otherwise

appear in this action.  For the foregoing reasons, Belleau respectfully requests that this Court enter

Plaintiff's proposed Default Judgment against Defendants, enjoining Defendants in accordance

with the terms contained therein.  Additionally, Belleau respectfully requests that the Court order

enhanced damages in the amount of $1,500,000 for Defendants' patent infringement, plus

prejudgment interest on the compensatory portion of damages ($500,000) and post-judgment

interest.  Finally, Belleau respectfully requests that the Court deem this case exceptional, and grant

its request for attorneys' fees and costs in the amounts of:  (1) $124,720.75 in outside counsel fees;

(2) $83,776 in in-house counsel fees; and (3) $881.70 in litigation costs.

New York, New York
August 23, 2018

Respectfully submitted,

CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP

By:  _____/s/Nicole M. Mazanitis_____
         Turner P. Smith (TS 8052)
         Michael R. Graif (MG 4795)
         Nicole M. Mazanitis (NM 1983)
101 Park Avenue
New York, New York 10178
(212) 696-6000

*Attorneys for Plaintiff*
*Belleau Technologies, LLC*

---

[4] Belleau reserves the right to supplement these calculations for additional fees/costs incurred.