UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

BELLEAU TECHNOLOGIES, LLC,

                Plaintiff,                          18 Civ. 06319 (DLC)

      v.

JOEALLENPRO LIMITED, a foreign corporation;
and JOE ALLEN, as an individual,

                Defendants.

----------------------------------------------------------x

## DECLARATION OF ERIC SADKIN

      ERIC SADKIN, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746:

      1.      I am the founder and Chief Executive Officer of plaintiff Belleau Technologies,

LLC ("Belleau").  I am also one of the named inventors of U.S. Patent No. 9,953,646 (the

"'646 Patent"), which describes a "Method and System for Dynamic Speech Recognition and

Tracking of Prewritten Script."  Unless otherwise specified, I have personal knowledge of the

facts and circumstances described herein.

      2.      I submit this Declaration in support of Belleau's Motion for a Default Judgment.

### Background

      3.      I obtained my bachelor's degree in economics from the University of Chicago,

and an MBA from the University of Pennsylvania – the Wharton School of Business.

      4.      While attending Wharton, I was trained in communications and public speaking at

the Wharton School of Business.  This training included use of then-current teleprompter

technology, and observing and evaluating how speakers used the teleprompter products (e.g.,

they required manual scrolling by another person).  I saw the business potential in an

advancement in teleprompter technology, and then personally performed a feasibility study to learn whether speech recognition platforms were available for mobile devices such as phones and tablets.  I learned that there were such platforms and then continued exploring the idea.

5.      I have been involved in the original design of the patented method and in the key refinements of that method for nearly four years.  Belleau has invested extensive time, labor, skills, and expenditures in developing its product and has diligently worked to protect its business, reputation, and patent.

6.      Before PromptSmart launched in 2014, I spent about twelve consecutive months focused on designing the patented method.  Six of those months were spent intensively working with two other co-inventors – Lakshmish Kaushik and Jasjeet Gill.  During that six month period, I devoted all of my time to the invention, and had no other work commitments.

7.      My input was integral in designing the logic of the system to create a method that functioned.  I was involved in creating the concept of narrowing the matching window and scrolling the script piece-by-piece using an automatic speech recognition buffer.

8.      Once PromptSmart launched, I remained customer-facing, collecting data from users on how the system was performing.  I analyzed the feedback and then used that data to instruct software developers on how to modify the product in the two to three month period post-launch.

9.      In the years following the launch, I continued to gather information to assist in further refinements to the method.  In November of 2016, I attended an in-person workshop with Lakshmish and Jasjeet.  The workshop was designed, and did, make our methods even more robust than they were before, and more useful to PromptSmart customers.  This workshop culminated in specific recommendations to enhance our method that were subsequently

2

implemented into our PromptSmart products.  Several rounds of internal testing and a thorough round of external beta testing resulted in a product update becoming available to the public in December of 2017.

## The AutoPrompter App

10.     I am the person primarily responsible for the business strategy and financial dealings at Belleau.

11.     If a hypothetical negotiation would have occurred with the defendants in this action, Joe Allen and JoeAllenPro Limited, I would have led the negotiations on behalf of Belleau and made all business decisions.

12.     Belleau values its '646 Patent extremely highly.

13.     In negotiating with defendants, Belleau would have insisted on an upfront, fixed sum, versus a royalty payment over time.  Based on the time-value of money, having a lump sum now is better than having a stream of deferred payments.  Moreover, Belleau possesses a legal monopoly over the invention and thus is the only entity capable of offering license terms. Accordingly, this would put Belleau in a very strong bargaining position.  A large, guaranteed royalty up-front would also serve Belleau's interests because it would mitigate the risk of being displaced as the market leader in mobile teleprompter app software.  Insisting on an up-front figure would also anchor the negotiation in Belleau's favor psychologically.  Lastly, Belleau's insistence on an up-front royalty would be demonstrable proof that Belleau's intellectual property is extremely valuable, which would be useful in other negotiations were Belleau to merge with a larger company or be acquired.  Due to the uncertainty of any future royalty streams, any potential acquirer is unlikely to reflect this kind of revenue with a higher purchase price.  And thus Belleau is maximally incentivized to front-load the value of the licensing

3

agreement with an up-front royalty.

14.     Belleau does not currently license the technology in the '646 Patent; any license to defendants would have been the first of its kind, and to a competitor competing in the same territory and in the same line of business.  Therefore, from a business standpoint, any upfront payment for use of the '646 Patent would have had to have been substantial.

15.     In this particular scenario, Belleau would not have considered an upfront royalty less than $500,000.  The reasons for this are numerous.

16.     First, Belleau would have been licensing the technology embodied in the '646 Patent to a direct competitor.

17.     Second, Belleau has had a policy of not licensing out its technology in an area where it occupied a controlling market position.

18.     Third, the technology embodied in the '646 Patent resides at the core of the infringing AutoPrompter product and meets the exact specifications required by defendants. This makes a license valuable and indispensable to any hypothetical success of defendants' infringing AutoPrompter product.  The fact that the technology would have been key to defendants would have provided a great point of leverage for Belleau in a license fee negotiation.

19.     Fourth, Belleau's products which embody the '646 Patent – the PromptSmart applications – are highly successful, due in large part to the technology in the '646 Patent.  This proven commercial success would have put Belleau in a strong bargaining position with defendants.

20.     Fifth, the '646 Patent provided a technological leap to teleprompter technology, which had previously used far less sophisticated methods of scrolling.  Indeed, the technology embodied in the '646 Patent provides a large benefit to end-users of the inventions.

21.     <u>Sixth</u>, the mere existence of another competitor deploying our patented scrolling methods would undermine our active endeavor to develop long-term relationships with professional media companies to develop bespoke software solutions on their behalf.

22.     Based on these factors, in a hypothetical negotiation with defendants, Belleau would not have accepted an upfront royalty payment of less than $500,000.

5

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
August 20 , 2018

Eric Sadkin