IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BELLEAU TECHNOLOGIES, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 18 Civ. 06319 (DLC) |
| JOEALLENPRO LIMITED, a foreign corporation; and JOE ALLEN, as an individual, | JURY TRIAL DEMANDED |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JOEALLENPRO LIMITED AND JOE ALLEN'S MOTION TO VACATE DEFAULT AND MOTION FOR LEAVE TO FILE A RESPONSIVE MOTION OR PLEADING**

Defendants JoeAllenPro Limited ("JoeAllenPro") and Joe Allen file this memorandum of law in support of their motion to vacate the Clerk's entry of default entered on August 16, 2018 (Dkt. Nos. 34, 35) and their motion for leave to file a responsive motion or pleading.

**I.      PRELIMINARY STATEMENT**

On July 12, 2018, Plaintiff Belleau Technologies, LLC filed this lawsuit against Defendants JoeAllenPro and Allen alleging that JoeAllenPro's AutoPrompter app infringed "one or more claims" of U.S. Patent No. 9,953,646 (the "'646 patent"). Dkt. No. 1. Plaintiff delivered a copy of the summons and complaint to Defendants by FedEx in the U.K. on July 23, 2018. *See* Dkt. Nos. 23, 24. Upon receiving Plaintiff's complaint, Allen contacted his attorney in the U.K., who then referred him to a U.S. law firm located in Dallas, Texas. *See* Declaration of Joe Allen ¶ 3. Based on incorrect information provided by that firm regarding how to respond to the Plaintiff's allegations, Defendants did not answer or otherwise respond to the complaint. *Id*. On August 16, 2018, the Clerk entered default against each Defendant for failure to answer or otherwise move

1

with respect to Plaintiff's complaint.  Dkt. Nos. 34, 35.  When it became apparent Defendants were given incorrect legal advice regarding how to proceed in this lawsuit, Allen promptly contacted and retained present counsel located in New York.  *Id.* ¶ 4.  Defendants now file this motion to vacate the default and motion for leave to file a responsive motion or pleading in this case.

## II.   ARGUMENT

This Court evaluates a Rule 55(c) motion to set aside an entry of default and an opposition to a motion for default judgment under the same standards.  *See* Fed. R. Civ. P. 55(c); *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 243 (2d Cir. 1994).  "Rule 55(c) allows an entry of default to be set aside for "good cause," and courts evaluate whether "good cause" exists by considering: (1) whether the default was willful; (2) whether the plaintiffs would be prejudiced by the denial of the motion for default judgment; and (3) whether there are any meritorious defenses to plaintiff's claims."[1]  *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.,* 220 F.R.D. 404, 406 (S.D.N.Y. 2004) (citing *Commercial Bank of Kuwait,* 15 F.3d at 243).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citing *Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 320 (2d Cir. 1986)).

"It is well established that default judgments are disfavored."  *Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 174 (2d Cir. 2001).  "Strong public policy favors resolving disputes on the merits."  *Am. Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir. 1996).  Default judgments are therefore "reserved for rare occasions, [and] when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the

---

[1] Although the considered factors are the same, the standard for deciding whether to vacate an entry of default is less rigorous than the standard applied when deciding whether to vacate a default judgment. *See Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 171 (2d Cir. 2001).

defaulting party." *Enron Oil*, 10 F.3d at 96.  "In other words, 'good cause' . . . should be construed generously." *Enron Oil*, 10 F.3d at 96; *Johnson v. New York Univ.*, 324 F.R.D. 65, 69-70 (S.D.N.Y. 2018).  Further, defaults "are particularly disfavored" when "substantial sums of money are demanded." *Enron Oil*, 10 F.3d at 97 (citing *Sony Corp.,* 800 F.2d at 320).

### A.    Defendants' Default Was Not Willful.

"In the context of a default, the Second Circuit has interpreted 'willfulness' to mean 'more than merely negligent or careless.'" *Johnson*, 324 F.R.D. at 70 (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)).  Even "gross negligence" does not necessarily constitute willful conduct.  *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 338 (S.D.N.Y. 2013) (citing *McNulty,* 137 F.3d at 738; *Am. Alliance Ins. Co..,* 92 F.3d at 61).  Thus, a defendant's inadvertent mistake may be excusable.  *Johnson*, 324 F.R.D. at 70 (holding that defendants' failure to timely answer the complaint based on an incorrect belief regarding waiver of service would be excusable); *see also Sony Corp.*, 800 F.2d at 320 (citing *Latini v. R.M. Dubin Corp.,* 90 F. Supp. 212, 215 (N.D. Ill. 1950) (holding that defendant's good faith mistake regarding jurisdiction prevented entry of default judgment and justified enlargement of time to file answer)).  "[A] defendant's prompt application for a motion to set aside an entry of default suggests that the default was not willful." *Johnson*, 324 F.R.D. at 70 (citing *Enron Oil*, 10 F.3d at 98).  By contrast, a default may be willful "'where the conduct of counsel or the litigant was egregious and was not satisfactorily explained,' such as when defendants 'failed, for untenable reasons, after defendants had 'purposely evaded service for months,' to answer the complaint." *Id.* (quoting *McNulty*, 137 F.3d at 739).

Here, Defendants acted on a good faith and reasonable, albeit mistaken, belief about the proper way to respond to Plaintiff's action.  Upon receiving notice of Plaintiff's action,

Defendants promptly consulted with counsel in the U.K. and their recommended U.S. counsel, a Texas law firm. Allen Decl. ¶ 3. The Texas law firm misinformed Defendants of their rights and obligations, however, which resulted in Defendants' failure to reply to documents and communications. *Id.* Defendants subsequently sought advice from present counsel, and, once properly informed, acted immediately to defend their case. *Id.* ¶ 4. Defendants' inadvertent and good faith mistake does not rise to the level of "egregious" or willful conduct. *See McNulty*, 137 F.3d at 739; *Johnson*, 324 F.R.D. at 70; *Sea Hope*, 978 F. Supp. 2d at 338. Further, Defendants demonstrated an intent to fulfill their obligations as litigants by promptly consulting with counsel. *See Enron Oil*, 10 F.3d at 97-98 (holding that defendant's retaining of counsel evidenced "his intent to fulfill his obligations as a litigant" such that his default was not willful). Additionally, once Defendants communicated with present counsel and realized that they had been misinformed, Defendants took immediate action to remedy the default and protect their rights. Allen Decl. ¶ 4. These actions are consistent with cases where courts have held that a party's default was not willful. *See, e.g.*, *id.* (holding that defendant who made good faith effort to adhere to the court's rules and protect his rights and made clear he was unwilling to forfeit his rights did not willfully default); *Johnson*, 324 F.R.D. at 70 (holding that defendant who promptly attempted to remedy defaults did not act willfully); *Brady v. W. Overseas Corp.*, No. 04-CV-2878, 2008 WL 4936875, at *4 (E.D.N.Y. Nov. 14, 2008) (holding that defendant who was negligently unaware of court orders but responded quickly after entry of default did not act willfully). Accordingly, this factor favors Defendants.

Moreover, even assuming arguendo that Defendants did act willfully, the other relevant factors, discussed *infra*, weigh so heavily in favor of Defendants that vacatur is appropriate. In *Sea Hope*, this Court held that, even assuming that the defendant's default was willful (and the

evidence suggested that the defendant had indeed intended "to avoid service altogether"), it "[was] not necessary to reach this question definitively because the other relevant factors weigh[ed] so heavily in favor of vacatur of the default." *Sea Hope*, 378 F. Supp. 2d at 339; *see also Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos,* 109 F.R.D. 692, 698 (S.D.N.Y. 1986) (denying motion for default judgment and vacating default where default "could be considered" willful but other factors favored vacatur); *Tecnart Industria E Comercio Ltda. v. Nova Fasteners Co., Inc.,* 107 F.R.D. 283, 285 (S.D.N.Y. 1985) (finding vacatur warranted despite willfulness of the default where defendant presented a meritorious defense and vacatur would not prejudice the plaintiff).

### B.   Vacatur of Default Would Not Prejudice Plaintiff.

Plaintiff does not argue that it would be prejudiced if the default were to be vacated. Furthermore, the Second Circuit has held that "delay standing alone does not establish prejudice." *Enron Oil*, 10 F.3d at 97-98.  "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (citation omitted).  No such claim—or any claim of prejudice—is made here, and the slight delay that has occurred in this case would not lead to any such problems.  Additionally, a delay of "several weeks" does not establish prejudice where a case is in its early stages.  *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 993 (E.D.N.Y.1995) (stating that a brief delay does not establish prejudice and "real prejudice is evidence by loss of evidence...[or] roadblocks to discovery."); *see also Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013) (explaining that "it would be almost impossible to establish . . . prejudice" where the defaulting party "filed an appearance...less than one month after [the non-defaulting party] filed its motion

for a default judgment." Here, Defendants' brief delay does not establish prejudice. Defendants filed an appearance with the Court within several weeks (just over one month) after being served default judgment motion papers by Plaintiff. *See* Dkt. No. 59.

Because Plaintiff has not established that it would be prejudiced by a vacatur of default, this factor strongly favors Defendants. Moreover, if the Court were to deny Defendants' motion, Defendants would be severely affected given Plaintiff's claim of over $1,700,000 in damages, fees, and costs (Dkt. No. 40 at 31). *See Enron Oil*, 10 F.3d at 97 (explaining that defaults "are particularly disfavored by the law when . . . substantial sums of money are demanded"). For this additional reason, the Court should set aside the entry of default.

### C.    Defendants Have Meritorious Defenses to Plaintiff's Claims.

"The test of . . . a [meritorious] defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil*, 10 F.3d at 98. The defense "need not be ultimately persuasive at this stage," *Am. Alliance*, 92 F.3d at 61, and "[t]he defaulting defendant need only meet a low threshold to satisfy this factor," *Johnson*, 324 F.R.D. at 72 (citations omitted). "A defendant's allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Sea Hope*, 978 F. Supp. 2d at 339 (S.D.N.Y. 2013) (quoting *Keegel v. Key West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 374 (D.C. Cir. 1980)); *see also Dassault Systemes, SA v. Childress*, 663 F.3d 832, 843 (6th Cir. 2011) (stating that "***even conclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense***") (emphasis added).

### 1.    Defendants have meritorious defenses of lack of personal jurisdiction and improper venue.

Defendants have a meritorious defense because Plaintiff has failed to meet its burden of demonstrating that this Court has personal jurisdiction over Defendants or that venue is proper in this district.  "To defeat a Rule 12(b)(2) Motion, a plaintiff must 'plead[ ] in good faith, legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction.'"  *Rates Tech. Inc. v. Cequel Commc'ns, LLC*, 15 F. Supp. 3d 409, 414 (S.D.N.Y. 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184 (2d Cir. 1998)). Determining personal jurisdiction over a non-domiciliary is a two-step process, first applying New York's long-arm statute, then analyzing compliance with the Due Process Clause.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010).

New York extends personal jurisdiction over non-domiciliaries under CPLR §§ 301 (general jurisdiction) and 302 (specific jurisdiction).  *Jewell v. Music Lifeboat*, 254 F. Supp. 3d 410, 417 (E.D.N.Y. 2017).  CPLR §§ 302(a)(1)-(3), relevant here, provides that a court may exercise personal jurisdiction over any non-domiciliary who: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; or (3) commits a tortious act without the state causing injury to person or property within the state if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.  Plaintiff's complaint fails to establish that any of these requirements are satisfied.  Plaintiff provides only conclusory statements that Defendants, *inter alia*, "have purposefully availed themselves of the privilege of conducting business within this judicial district."  Dkt. No. 1 ¶ 6.  However, Plaintiffs have not sufficiently claimed, e.g., that Defendants have ever sold or offered to sell the

AutoPrompter app in New York, that anyone in New York has purchased the AutoPrompter app, that Defendants purposefully directed any activity into New York, or that Defendants have derived any revenue or otherwise "availed themselves of the privilege of conducting business" in New York.  Because Plaintiff has failed to establish personal jurisdiction over Defendants or that venue is proper, Defendants would have meritorious defenses on these grounds.

## 2.   Defendants have a meritorious defense of noninfringement.

Defendants have a meritorious defense because the AutoPrompter does not infringe any of the claims of the '646 patent.  A defendant does not infringe a patent claim unless a plaintiff proves the "literal presence of each and every claim element or its equivalent in the accused product."  *Tomita Techs. USA, LLC v. Nintendo Co.*, 681 F. App'x 967, 970 (Fed. Cir. 2017).

While Plaintiff does not identify any particular claims Defendants allegedly infringe,[2] all four independent claims of the '646 patent include the limitation "a predetermined number of said hypothesis words."  Thus, to prove infringement of any of the claims—independent or dependent—of the '646 patent, Plaintiff will be required to establish the presence of "a predetermined number of hypothesis words" in the AutoPrompter app.  In his declaration, Defendant Joe Allen, the owner and president of JoeAllenPro, states that he personally developed all of JoeAllenPro's apps, including the AutoPrompter app, and wrote all of the AutoPrompter app's software and source code.  Allen Decl. ¶¶ 1-2.  Mr. Allen testifies that none of JoeAllenPro's teleprompter apps, including the AutoPrompter, utilize or employ a "predetermined number of hypothesis words" or any substantially similar functionalities.  *Id.* ¶ 6. Therefore, if proven at trial, Defendants have a complete defense to Plaintiff's patent

---

[2] Plaintiff's complaint merely states that Defendants infringe "one or more claims" of the '646 patent.  *See* Dkt. No. 1 ¶ 13.  The only further indication as to which claim(s) Plaintiff assert(s) is a claim chart of claim 18 provided in its memorandum of law in support of its TRO and motion for preliminary injunction.  Dkt. No. 16 at 13-16.

infringement claims because the AutoPrompter does not practice "each and every claim element." *Tomita Techs,* 681 F. App'x at 970.

Allen also testifies that claim limitations found in claims 6 and 18-20 are not present in the AutoPrompter.  For instance, Allen explains that none of JoeAllenPro's teleprompter apps, including the AutoPrompter, utilize or employ the operation or substantially similar operations of determining whether words have been matched to a match location.  Allen Decl. ¶ 7.  Allen additionally avers that none of JoeAllenPro's teleprompter apps, including the AutoPrompter, utilize or employ the operation or substantially similar operation of removing one or more words from "hypothesis words." *Id*. ¶ 8.  As Allen's testimony that the AutoPrompter does not practice key claim elements required to infringe each claim of the '646 patent would constitute a complete defense if proven at trial, this factor strongly favors Defendants.

> **3.    Defendants assert that the claims of the '646 patent are invalid under 35 U.S.C. §§ 102, 103, and/or § 112 and/or ineligible patent subject matter under § 101.**

In addition to having a meritorious defense of noninfringement, Defendants also have other defenses to Plaintiff's claims, including that the claims of the '646 patent are invalid under 35 U.S.C. §§ 102, 103, and/or § 112 and/or ineligible patent subject matter under § 101.  These affirmative defenses further support this factor because, if proved, each would provide Defendants a complete defense at trial.  Accordingly, this factor favors Defendants.

## III.    CONCLUSION

Because all of the factors favor vacating default, Defendants respectfully request that the Court vacate the Clerk's entry of default and grant leave for Defendants to file a responsive motion or pleading in this case.

Date: October 3, 2018                                        Respectfully submitted,

/s/ Dariush Keyhani
Dariush Keyhani
Meredith & Keyhani, PLLC
125 Park Avenue, 25th Floor
New York, New York 10017
Tel. (212) 760-0098
Fax (212) 202-3819
dkeyhani@meredithkeyhani.com
*Attorneys for Defendants*